RHODES et al., Respondents, v. CITY OF ABERDEEN et al., Appellants

CAMPBELL et al., Respondents, v. CITY OF ABERDEEN et al., Appellants

REESE et al., Respondents, v. CITY OF ABERDEEN et al., Appellants

(50 N. W.2d 215)

(File Nos. 9206-9207-9208. Opinion filed November 20, 1951)

**F. W. Noll, B. M. Williamson,** Aberdeen, for Appellants.
**Van Slyke, Agor & Bantz,** Aberdeen, for Respondents.

BURNS, Circuit Judge. Three separate actions were brought by the plaintiffs and respondents against the City of Aberdeen, defendant and appellant, for judgments declaring resolutions of the City of Aberdeen annexing respondents' properties to the City of Aberdeen invalid and permanently enjoining the city from attempting to enforce the resolutions or taking any proceedings thereunder. The

trial court held the resolutions invalid and in two of the cases permanently enjoined the city from taking further proceedings thereunder. In the Rhodes case, the trial court permanently enjoined the city from attempting to bring the Rhodes property within the city.

By stipulation and order of the court, the three cases, herein referred to as the Campbell, Rhodes and Reese cases, were consolidated for briefing and argument and are here considered together.

By resolutions adopted, published and filed with the required formalities, the City Commission of the City of Aberdeen, purporting to act under the provisions of SDC 45.2906, annexed the property of the respondents hereinafter described. A question common to the three cases is whether the properties so annexed are "lots laid off and platted adjoining any municipality" within the meaning of SDC 45.2906.

The Campbell and Rhodes properties lie north of 15th Avenue N.E. and east of Main Street produced north. At the time of the filing of the first plat of Elmwood Acres, 15th Avenue N.E. was part of the north boundary line of Aberdeen. The first plat of Elmwood Acres was filed in the office of the Register of Deeds of Brown County on March 30, 1938. This plat was not submitted to nor approved by the City Commission of Aberdeen under SDC 45.2806. Elmwood Acres is a tract 767.62 feet east and west by 744.1 feet north and south. It was platted into four lots. Lot 3 is a street tract 34 feet in width on the east side of the platted tract. Lot 4, 12.1 feet in width, was dedicated for street purposes along the south side of the platted tract and adjoining 15th Avenue for its entire length. Lot 1 was platted 150 feet along Main Street produced north and adjoining the street Lot 4 on the north 300.66 feet. All of the remainder of Elmwood Acres was platted as Lot 2.

Later, two plats of Elmwood Acres were filed in the office of the Register of Deeds for the purpose of platting Lot 2 into smaller tracts. These plats were not submitted to nor approved by the City Commission. Then on September 25, 1946, a plat described as the plat of the subdivision of Lot 2 of Elmwood Acres Addition to Aberdeen, South Dakota,

was filed, which had been submitted to and was approved
by the City Commission of Aberdeen.   This plat was receiv-
ed in evidence as Ex. I.   Attached is a photostatic copy of
the plat as filed, except that the certificates by the surveyor,

owner and treasurer and the approval of the city are not shown. The drawing shows Lots 1 and 3 and also Lot 4, which is not designated, and shows Plots A, B, C and D. Although these lots and plots are shown, they are not a part of the plat of the subdivision of Lot 2 of Elmwood Acres Addition to Aberdeen as approved by the City Commission. Such plat includes Plots E, F, G and H of Lot 2. Plot H adjoins Lot 1 on the east and street Lot 4 on the north, and is in dimensions 150 feet north and south by 66.3 feet east and west. Plot G is in dimensions 248 feet north and south by 666.96 feet east and west. It abuts on the north of Lot 1, Plot H, and Plots A to D.

The respondents in the Campbell case are the owners of Lot 1 and Plot G and the west half of Plot H of said Elmwood Acres, containing in all about 4.96 acres.

The respondents in the Rhodes case are the owners of Outlot A of the Northwest Quarter of Section 12, Township 123 North, Range 64 West, being a plot of ground 300 feet in width north and south, and 733.62 feet in length east and west, containing 5.05 acres. The south line of Outlot A when platted was approximately 744 feet north of the north line of 15th Avenue N.E. of the City of Aberdeen, which was then the north boundary of the corporate limits of the city.

The plat of Outlot A was filed in the office of the Register of Deeds on November 25, 1935, more than two years prior to the first plat of Elmwood Acres, the north line of which adjoins the south line of Outlot A. The area later platted as Elmwood Acres lay between Outlot A and the north boundary line of the City of Aberdeen. The plat of Outlot A was not submitted to nor approved by the City Commission of Aberdeen. Outlot A was not laid out into blocks and lots with streets and alleys.

The respondent Reese, in September, 1947, informed the then Board of Commissioners of Aberdeen that he desired to purchase Stucke's Outlot 4 for industrial purposes, provided he could be assured that such property would not be taken into the city within the foreseeable future. On September 29, 1947, the Board passed a resolution purporting to agree that the city had no intention at that time or in

the foreseeable future of taking any part of said property into the corporate limits of the city. Reese thereupon exercised his option to purchase said real estate, and on or about March 25, 1948, replatted said Outlot 4 as Reese's Outlots, and filed such plat in the office of the Register of Deeds. It does not appear that such plat was ever presented to and approved by the Board of City Commissioners. The property so platted adjoined the city corporate limits on three sides. The plat included Outlots 1 to 5, varying in size from 2.13 acres to 13.54 acres. As a part of the transaction, Reese had conveyed to the city a strip of ground 66 feet wide running east and west across said Outlots, which strip was then held by the city·under a lease, and was used for street purposes, and was known as 9th Avenue S.W. Reese constructed a concrete block manufacturing plant on one of the Outlots, which thereafter, on or about February 4, 1948, he sold to respondent Gage Bros. Concrete Materials, Inc. On October 17, 1948, the Board of Commissioners adopted a resolution purporting to extend the corporate limits to include Reese's Outlots.

The statutes of this state provide the following three methods by which additional territory may be annexed to a municipality:

(1)  Inclusion of contiguous territory upon petition of legal voters and owners and resolution of the governing body of the municipality as provided by SDC 45.2905.

(2)  Inclusion of unplatted contiguous territory upon petition by the municipality to the Board of County Commissioners after notice and hearing as provided by SDC 45.2907.

(3)  Inclusion of platted lots adjoining the municipality by resolution of the governing body of the municipality as provided by SDC 45.2906.

■■  A municipality of this state has no power to extend its boundaries other than that granted to it by the Legislature. Such power of annexation as conferred on a municipality is an extraordinary power which must be exercised by a municipality in strict compliance with the statutes conferring such power. Weeks v. Hetland, 52 N. D. 351, 202 N.W. 807; Annotation "Power to Extend Municipal

Boundaries," 64 A.L.R. 1341-1344; 37 Am.Jur., Municipal Corporations, Sec. 24, Pages 640-641.

SDC 45.2906 is as follows: "Whenever there shall be lots laid off and platted adjoining any municipality and a plat of the same is of record in the office of the register of deeds of the proper county, the governing body may by resolution so extend the boundary of such municipality as to include such lots." This section is a part of Title 45, "Municipal Government," and Chapter 45.29, "Changing Corporate Limits". The provisions of SDC 45.2906 have been a part of the statutory law of this state relating to the extension of the corporate limits of a municipality without change in substance since the adoption of the original source statute, Section 48, Chapter 24, of the Code of 1877. Like provisions were carried forward into the Revised Political Code of 1903 in Sections 1378, 1379 and 1462. Section 6560 of the Revised Code of 1919 is almost identical with SDC 45.2906. Such section is classified under Part 8 "Municipal Corporations," Chapter 15 "Plats, Boundaries and Dissolution," Article 4 "Changing Corporate Limits."

In determining the meaning of the words "lots laid off and platted" as used in SDC 45.2906, consideration must be given to SDC 45.2806, which provides:

"The provisions of this chapter shall apply to every addition to, or subdivision within, any city, town, or unincorporated town, provided that if the land or any part thereof included in any such addition or subdivision is within, adjoining, or contiguous to the boundaries of any city or town, the plat thereof, before being recorded, shall be submitted to the governing body thereof, which shall thereupon examine the same, and if it shall appear that the system of streets and alleys set forth therein conforms to the system of street and alleys of the existing plat of such city or town, and that all municipal taxes and special assessments, if any, upon the tract or subdivision have been fully paid, and that such plat and the survey thereof have been executed according to law, such governing body shall, by resolution, approve the same, and the auditor or clerk shall indorse on such plat a copy of such resolution and certify to the same thereon.

"No plat of any such addition or subdivision so situated shall be entitled to record or be recorded unless the same bears a copy of such resolution and certificate of the auditor or clerk."

There were provisions in the Revised Code of 1877 for laying out townsites and the Compiled Laws of 1887 contained provisions for an addition or subdivision of outlots. Such statutory provisions were incorporated in Sections 1490 and 1495 of the Revised Political Code of 1903, which sections were a part of Article 14 "Town Plats," and Chapter 15 "Incorporated Towns." However, there was no provision for approval of the plat by the governing body of the municipality until the 1915 amendment.

Chapter 116 of the Session Laws of 1915 amended Section 1495 of the Revised Code of 1903. This chapter is like the present statute SDC 45.2806, except that it contained no requirement for payment of taxes and special assessments as a condition for approval of the plat. The provisions of such chapter were carried forward into Section 6542 of the Revised Code of 1919, which is found under Part 8 "Municipal Corporations," Chapter 15 "Plats, Boundaries and Dissolution," and Article 1 "Town and City Plats."

Section 6542 of the Revised Code of 1919, was amended by Chapter 191 of the Session Laws of 1931 so as to require payment of city taxes and special assessments against the land platted. This chapter in substance was made a part of the South Dakota Code of 1939 as Section 45.2806, as above set out.

Based on this legislative history and the classification and relationship of the statutes relating to additions and plats, it is our view that the Legislature, in using the words "lots laid off and platted adjoining any municipality" in SDC 45.2906, had reference to the platting of an addition or subdivision adjoining or contiguous to the boundaries of a municipality as provided by SDC 45.2806.

In this connection, we have given consideration to SDC 51.1405, as amended by Chapter 214 of the Session Laws of 1945, which is as follows:

"Metes and Bounds Descriptions of Tract: Owner must

plat and record before making transfer. When any owner of a government subdivision or a platted tract or lot which is within or without the corporate limits of any city or town shall divide the same into parcels for the purpose of transfer that cannot be described except by metes and bounds, he shall cause the parcels of land so divided to be platted into lots and have the lots numbered and a plat thereof recorded before any instrument of transfer of such divided parcels of land shall be recorded. If such plat cannot be made without an actual survey he shall have such lands surveyed and the plat thereof recorded.

"If the owner of any parcel or lot of land that has been divided as set forth in this section shall refuse or neglect to cause such plat and survey to be made and recorded within 30 days after written request by the county auditor at the direction of the board of county commissioners then said auditor shall cause such plat to be made from the records of the Register of Deeds or from an actual survey of the land when necessary and shall have the same recorded. Such plat being duly certified and recorded, a description of the property in accordance with the numbers and description set forth in such plat shall be deemed a good and valid description of the lots or parcels of land so described.

"When the owner of such divided parcels of land fails to comply with the provisions of this section, the cost of platting and recording, and surveying when necessary, shall be paid by the county and the amount thereof shall be added to the tax upon such tract or lot of land the next ensuing year, which tax when collected shall be credited to the county general fund."

SDC 51.1405 is classified under the title "Property," and under the Chapter "Real Property Transfers." The source statutes Sections 5814-5816 of the Revised Code of 1919 were under Part 7 "County and Township Organization," Chapter 1 "County Government," and Article 8 "Plat of Outlots."

SDC 51.1405 by its express terms applies only to a situation where an owner has divided his land into parcels for purpose of transfer that cannot be described except by metes and bounds. Then for the purpose of description and trans-

fer he must have a plat of such parcels made. This is not the platting of an addition or subdivision to a municipality as contemplated by Chapter 45.28 relating to municipal plats and Chapter 45.29 relating to changing corporate limits. The platting of tracts or lots for purpose of transfer and recording of conveyances thereof as provided by SDC 51.1405, as amended is something different from the platting of lots intended to be made a part of a city plat as provided by SDC 45.2906. SDC 45.2906 refers to lots that have been laid out and platted by the owner under the provisions of SDC 45.2806 and not to lots platted under SDC 51.1405, as amended.

We have pointed out above the three methods by which additional territory may be annexed to a municipality. When the method is that of petition by legal voters and owners as provided by SDC 45.2905, it is not material whether the land is platted or unplatted. But SDC 45.2907 sets out a procedure for inclusion of "contiguous territory not platted, laid out, or recorded" upon petition of the municipality to the Board of County Commissioners after notice and hearing. Property which is divided by an owner into parcels for purpose of transfer which cannot be described except by metes and bounds and which is therefore platted into lots for purpose of transfer and recording as required by SDC 51 1405, as amended is not "platted, laid out, or recorded" within the meaning of SDC 45.2907.

■■ The term "lots laid off and platted adjoining any municipality" as used in SDC 45.2906, means lots platted in accordance with the requirements of SDC 45.2806. Only when the plat of lots adjoining a municipality has been submitted by the owner to the governing body of the municipality, has been approved by its resolution endorsed thereon, and the plat recorded, as provided by SDC 45.2806, may the governing body include such platted lots within the territorial limits of the municipality by resolution without notice and hearing under the provisions of SDC 45.2906.

The plat of the Rhodes property was never submitted to nor approved by the Board of Commissioners of the City of Aberdeen. The Rhodes and Campbell properties were included in the same resolution of annexation. In Cole v. City of Watertown, 34 S. D. 69, 147 N.W. 91, 92 this court

has said: "The power to detach territory is, in its nature, analogous to the power to attach territory, and statutory provisions in relation to these two powers are subject to the same rules of construction." In that case, it was held that a petition to the circuit court to exclude territory must be either granted or refused as to the whole tract described in the petition. It follows that all of the territory included in a resolution of annexation as provided for by SDC 45.2906 must be "lots laid off and platted" within the meaning of SDC 45.2806. Because the plat of the Rhodes property was never submitted to nor approved by the Board of Commissioners of Aberdeen in the manner provided by statute, the annexing resolution is invalid. This makes it unnecessary to determine the force and effect of the submission to and approval by the City Commission of the plat of the subdivision of Lot 2 of Elmwood Acres.

The attempt to include the Reese property was by a separate resolution. As has been stated, it does not appear that the plat of the Reese property was ever submitted to and approved by the City Commission. This resolution is also invalid.

The conclusions reached in this case are consistent with the holdings of this court in Brannigan v. Schneck, 50 S. D. 116, 208 N.W. 718, and Waring v. Town of South Sioux Falls, 72 S. D. 215, 31 N.W.2d 766.

■ Because the public interest may require further proceedings in the future by the City of Aberdeen to annex all or part of the Reese property, which adjoins the corporate limits on three sides, we pass on to the question of estoppel raised by the adoption of a resolution by the governing body of Aberdeen purporting to agree with the owner not to exercise the power to annex the Reese property within the foreseeable future. The power to annex territory to a municipality is a political power vested in the Legislature and conferred upon a municipality through delegation by the Legislature. Cole v. City of Watertown, 34 S. D. 69, 147 N.W. 91. It is a power to be exercised by the governing body within its sound discretion in good faith in the manner provided by statute, and to the extent required by the public interest. It is a power which the governing body of a muni-

cipality cannot legally contract away or barter off. A person dealing with a municipality is charged with the knowledge of the nature of its duties and the extent of its powers. An invalid attempt by the governing body of a municipality to contract away a political power cannot be relied upon as a basis for estoppel. Treadway v. Schnauber, 1 Dak. 236 [227], 46 N.W. 464; Ericksen v. City of Sioux Falls, 70 S. D. 40, 14 N.W.2d 89.

The judgment of the court below in each of the three cases is affirmed, except that the injunction in the Rhodes case should be modified to enjoin the city from futher proceedings under the resolution of annexation only.

BURNS, Circuit Judge, sitting for SMITH, J., disqualified.

RUDOLPH, P. J., and ROBERTS, SICKEL and LEEDOM, JJ., concur.