NORTHWESTERN PUBLIC SERVICE CO., Appellant v.
CITY OF ABERDEEN, et al., Respondents

(244 N.W.2d 544)

(Files Nos. 11446, 11592, 11593, 11600 and 11601.
Opinion filed July 28, 1976)

630

**Raymond Schutz, Siegel, Barnett, Schutz, O'Keefe & Ogborn,** Aberdeen, **John B. Wehde, Benson, Beach, Wehde & Martin,** Huron, for plaintiff.

**Charles B. Kornmann, Richardson, Groseclose, Kornmann & Wyly, Robert D. Miller,** Aberdeen, for defendants.

DUNN, Chief Justice.

Plaintiff Northwestern Public Service Company brought these actions for declaratory judgments against defendants, City of Aberdeen, Robert Nikolas, Al Westby, Mae Zemlicka and Allen Gates, as members of the City Council of Aberdeen, and Jeff Solem, as Mayor of Aberdeen, to determine the validity of a city ordinance regulating electric rates. From verdicts of the Circuit Court of the Fifth Judicial Circuit upholding the ordinance, the plaintiff appeals claiming that the trial court erred (1) in upholding the validity of the ordinance, (2) in not finding that laches and estoppel applied to the defendants by their acquiescence in the new rates over a considerable period, (3) in not finding that plaintiff substantially complied with the ordinance as to its 1973 increase, and (4) in ordering refunds on an individual basis rather than a lump sum. Defendants also appeal alleging that the trial court erred (1) in applying the wrong statute of limitations, (2) in permitting an offset of decreases in electric rates as against the illegal increases, (3) in figuring interest from the date of the judgment instead of the dates of the rate increases, and (4) in not finding that defendants were entitled to recovery for conversion, including attorney fees and costs. We affirm in part and reverse in part.

Plaintiff, a South Dakota corporation supplying electric services to, among others, the City of Aberdeen and its residents, commenced declaratory judgment actions to determine whether a city ordinance regulating electrical rates for the City of Aberdeen was in effect on July 1, 1973. Defendants answered that Aberdeen City Ordinance No. 741, approved July 29, 1952, was in effect and that plaintiff must comply with the provisions of that ordinance.

A counterclaim was also filed on behalf of defendants and citizens of Aberdeen for an accounting and refund of charges in excess of that allowed by Ordinance 741, interest on such overcharges, and temporary and permanent injunctions to restrain plaintiff from an August 13, 1973 rate increase. Such temporary injunction was denied by the trial court on October 5, 1973, but the court did order a $350,000 surety bond by plaintiff to compensate those customers suffering losses should Ordinance 741 be declared valid.

By Ordinance No. 749, effective May 7, 1953, and by Ordinance No. 878, effective September 9, 1958, the City of Aberdeen had on two occasions revised its ordinances. Both of these ordinances stated that they were "a revision of all of the ordinances of the City heretofore adopted," and both contained the following repealer clause:

"All ordinances and parts of ordinances in conflict with the provisions of this ordinance or relating to the subject matter of this ordinance and not reenacted as part of this ordinance, except as stated in this Chapter, are hereby repealed * * *."

The ordinances then contained several specific exceptions to this repealer. Among these, both ordinances excepted "ordinances establishing maximum rates and charges for electric energy * * *."

On December 12, 1969, the City of Aberdeen adopted Ordinance No. 1230 which, too, was designated "a revision of all of the ordinances of the City heretofore adopted." Ordinance 1230

contained the same repealing clause as Ordinances 749 and 878, but the phrase "ordinances establishing maximum rates and charges for electric energy" was not a part of the exceptions to the repealer. Plaintiff contends that this shows "unmistakable legislative intent" to repeal Ordinance 741. Plaintiff urges that Ordinance 1230 as a subsequent statute revising a whole body of law repealed the former law, and that any omissions must be looked upon as deliberate. *State v. Welbes*, 1898, 11 S.D. 86, 75 N.W. 820. While this repeal of Ordinance 741, if effective, would not affect a July 22, 1969 rate increase, it would permit an August 13, 1973 rate increase.

Plaintiff further contends the following:

1. Estoppel and laches should be applied to the defendants to prevent them from claiming any refunds from either of the rate increases, defendants having acquiesced in plaintiff's substantial investments in electric facilities in reliance upon higher utility rates.

2. Plaintiff substantially complied with the requirements of Ordinance 741 upon discovering it.

3. Defendants' counterclaim for refunds is subject to SDCL 15-2-15, a two-year statute of limitations upon recovering moneys into the treasury of the City of Aberdeen.

4. If Ordinance 741 is determined still in effect, certain rate decreases should be declared illegal and offset as a credit against any refunds from rate increases.

5. If refunds are ordered, these should be submitted to the court by plaintiff in a lump sum with the court ordering disbursement.

Defendants claim that the taking and keeping of the funds from overcharges is conversion by plaintiff in violation of SDCL

21-3-3 and that costs and attorney fees should be assessed.

The issue of the validity of Ordinance 741 was tried to the court on November 19 and 30, 1973. The court ruled that Ordinance 741 was in full force and effect. The court also found no basis for estoppel or laches against the City of Aberdeen. The remaining issues were raised in the trial court on May 14 and 15, and July 1, 1974. On October 22, 1974, the court ruled:

1. That plaintiff was enjoined from violating Ordinance 741.

2. Overcharges from 1969 and 1973 rate increases should be refunded individually with interest of six percent from August 13, 1973, for the 1973 increase, and from August 12, 1974, for the 1969 increase.

3. Defendants were not entitled to any recovery for conversion, costs, or attorney fees.

4. Plaintiff was entitled to credit for decreases in rates made voluntarily.

5. Refunds were ordered until May 1974, but limited to a two-year period prior to September 11, 1973, pursuant to SDCL 15-2-15 and 15-2-16.

 To repeal Ordinance 741, either an express or an implied repealer must be present in Ordinance 1230. For repeal of a law to be express it must be "literally declared," Argo Oil Corp. and State v. Lathrop, 1955, 76 S.D. 70, 75, 72 N.W.2d 431, 434, and must " 'leave no doubt as to what statute is intended.' " Pattermann v. City of Whitewater, 1966, 32 Wis.2d 350, 145 N.W.2d 705, 708. Ordinance 1230 does not mention Ordinance 741 by name nor use any of the terms plaintiff claims refer to Ordinance 741 in Ordinances 749 and 878. We cannot conclude that there is no doubt as to whether Ordinance 741 is included in the repeal, and therefore must conclude that there is no express repeal.

■ Upon seeking to discover an implied repeal, we are faced with the general rule.

> "The courts do not favor repeals by implication, and it is the duty of this court to give effect to both enactments if their provisions can be reconciled." Brookings County v. Sayre, 1928, 53 S.D. 350, 354, 220 N.W. 918, 920.

See also Jacobi v. Clarkson, 1932, 60 S.D. 401, 244 N.W. 535; 82 C.J.S. Statutes § 291 c; 73 Am.Jur.2d, Statutes, § 397.

■ Plaintiff's contention that an omission in a revision operates to repeal the former ordinance, State v. Welbes, 1898, 11 S.D. 86, 75 N.W. 820, does not determine the issue. It merely raises the question of legislative intent. When doubt exists concerning revision of a law, we must look at the law existing, Lewis v. Annie Creek Mining Co., 1951, 74 S.D. 26, 48 N.W.2d 815, and at the consequences of the implied repeal of such law.

Plaintiff also urges the court to look at the former law, particularly the differences between the "saving clauses" in Ordinance 1230 and Ordinances 749 and 878. This court, however, has ruled that the so-called "blanket repeal" which seeks to repeal all laws inconsistent to the repealer, "of course adds nothing to the repealing effect of the statute." A "manifest and total repugnancy" is required. Jacobi v. Clarkson, 1932, 60 S.D. 401, 404, 244 N.W. 535, 536. Furthermore, in Reaney v. Union County, 1943, 69 S.D. 392, 10 N.W.2d 762, this court stated:

> " 'A mere change of phraseology, or punctuation, or the addition or omission of words in the revision or codification of statutes, does not necessarily change the operation or effect thereof, and will not be deemed to do so unless the intent to make such change is clear and unmistakable.' " 69 S.D. at 396, 10 N.W.2d at 763.

Not only is such "unmistakable" intent lacking in Ordinance 1230 but the ordinance also contains the additional proviso "franchise ordinances and other ordinances granting special rights to

persons or corporations" in its listed exemptions to the repealer. Such proviso did not appear in Ordinances 749 and 878. By the addition of this proviso, Ordinances 1230 and 741 are not "so incompatible and inconsistent they cannot, by any reasonable construction, be reconciled and allowed to stand together in toto." Hauck v. Bull, 1961, 79 S.D. 242, 246, 110 N.W.2d 506, 508.

■ Looking at the consequences of an implied repeal, plaintiff urges that the City of Aberdeen sought to relinquish its control of electric rates. Where under a certain reading of an ordinance the city commission "would seem to have grossly failed to perform its duty" of conserving the public interest, "[t]he ordinance should have such construction as will avoid that result if that can reasonably be done." City of Madison v. Southern Wisconsin Ry. Co., 1914, 156 Wis. 352, 146 N.W. 492, 497, 10 A.L.R. 910. The trial court's order and judgment that Ordinance 741 was in effect at the time of the 1969 and 1973 rate increases and that plaintiff has not complied with such ordinance are affirmed.

■ Plaintiff maintains that at least as to the 1973 increase it substantially complied with the pre-filing requirements under Ordinance 741. The facts indicate that no data and no bond were filed previous to the 1973 increase in accordance with the ordinance — this in spite of a warning by the city attorney of the company's obligation to do so in June of 1973, some two months before the 1973 increase. The company's argument is that a bond ordered by the court to avoid an injunction on October 5, 1973, and the filing of some data required by the ordinance in January 1974, placed it in substantial compliance with the ordinance, at least on one of those dates. Under Ordinance 741, the city was entitled to this data prior to the filing in order to make a proper determination as to the merits of the increase, and the citizens of Aberdeen were entitled to the bond required in the ordinance prior to the filing in order to protect their interests in the event the rate increase was later determined to be invalid. The bond furnished pursuant to court order and the partial data furnished after litigation was in progress do not meet these standards. We find nothing in the facts of this case that would indicate a substantial compliance with the ordinance.

Estoppel or laches is applied to a municipality sparingly and only where there is manifest injustice, City of Rapid City v. Hoogterp, 1970, 85 S.D. 176, 179 N.W.2d 15, because of a change in position by the party seeking to prevent assertion of the right. Schwartzle v. Dale, 1952, 74 S.D. 467, 54 N.W.2d 361. See 31 C.J.S. Estoppel § 141; 28 Am.Jur.2d, Estoppel and Waiver, § 129. It is also generally stated that estoppel may be invoked against a municipality only for proprietary or private duties and not for governmental or public duties, i.e., those duties exercised for the benefit of the public. City of New Castle v. Withers, 1927, 291 Pa. 216, 139 A. 860. The neglect or refusal of a municipality to enforce an ordinance should not render the ordinance inoperable and grant immunity where this would undermine a policy adopted to protect the public. See also 31 C.J.S. Estoppel § 138 a.

This court recently ruled that mere municipal acquiescence is not sufficient to permit an estoppel. Some affirmative action must have been taken upon which the other party acted in reliance and substantially changed his position. City of Rapid City v. Hoogterp, supra.

The burden of proving the elements of affirmative action, reliance and change of position is upon the party contending the legal right is waived. Aune v. City of Mandan, 1969, N.D., 167 N.W.2d 754. This burden has not been met. Plaintiff relies entirely upon the failure of defendants to enforce Ordinance 741. No claim of affirmative action is made. Indeed, the city attorney in June 1973, did contact plaintiff warning of the existence of Ordinance 741. Presuming the ordinance had been repealed, plaintiff continued with its plan for a rate increase without compliance with that ordinance.

The two-year statute of limitations imposed by the trial court under SDCL 15-2-15 and 15-2-16 is not applicable. The counterclaim is clearly not "[a]n action upon a statute for a forfeiture or penalty to the state,"[1] nor is it an "action to recover into the treasury of any municipality * * funds illegally expended * * *."[2] The latter section applies to funds *from* a

1. SDCL 15-2-15(2).
2. SDCL 15-2-16.

municipal governing body or its officials. See Title to South Dakota Session Laws of 1957, Chapter 259. Here the counterclaim seeks recovery for the defendants and citizens of Aberdeen from plaintiff as the recipient of funds through omission of the city to enforce Ordinance 741.

Plaintiff's claim that rate decreases made should be declared illegal and offset against increases in determining a possible refund is based upon paragraph six of Ordinance 741.

> "No approved existing rate or charge shall be increased or decreased except by the approval of the governing body of the City of Aberdeen, provided, however, that nothing herein shall be construed to prevent the seller from establishing, by its voluntary action, general or special rate schedules providing rates lower than those approved under this ordinance * * *."

Plaintiff alleges that the first clause of paragraph six requiring city approval of rate decreases states the rule, and that the exception for unilaterally lowering rates applies only to establishing new rate schedules such as the Reddy-Guard rate schedule for yard lighting. Defendants respond that this exception must apply to all decreases in the rates approved under Ordinance 741 and argues that the City of Aberdeen would not desire to expend taxpayer money for investigation and hearings to possibly prohibit a decrease in electric rates.

We feel that to adopt plaintiff's interpretation of the ordinance would necessitate reading "new" into the phrase "general or special rate schedules." We do not propose to do so. Without the additional word, the exception appears to be applicable both to rates for new (special) schedules such as Reddy-Guard, and to decreases in existing (general) schedules. The use of "general" usually implies a whole class rather than a specific group within that class. In addition, as plaintiff has pointed out at some length, Ordinances 749 and 878 refer to Ordinance 741 as an ordinance "establishing *maximum* rates and charges for electric energy." (emphasis supplied)

■ At trial, plaintiff claimed that the requirement of approval for rate decreases in the first clause of paragraph six of Ordinance 741 was included to prohibit it from selling electric power for less than a contemplated competing municipal power company. However, this claim was not pursued at trial or on appeal. There was also some contention by defendants that the decreases were due to a "fuel clause" in the contract and the fact that a reduction was mandated in order to qualify for federal power. There is no substantial evidence in the record as to the effect of the "fuel clause" and the necessity of decreasing rates to obtain a cheaper federal power supply. Regardless of the motivation, however, these decreases were voluntarily made by plaintiff without any application by defendants in accordance with paragraph six of Ordinance 741 which exempts the decreases from approval by the governing board of the City of Aberdeen. We find that the trial court misinterpreted the effect of this paragraph of the ordinance, and we reverse its decision allowing the rate decreases as an offset.

■ Interest on the refunds from both rate increases should be computed from October 29, 1974. The right to recover and the amount of the refunds did not vest until the judgment was entered. SDCL 21-1-11.

■ The illegal rate increases were not a wrongful conversion. Thus costs and attorney fees are not recoverable. "To constitute conversion, nonconsent to the possession and disposition of the property by the one entitled to the possession thereof is indispensable." Biesmann v. Black Hills United Mining Co., 1936, 64 S.D. 82, 86, 264 N.W. 518, 520. By acquiescence in the 1969 rate increase and continued payment of increased rates, defendants now have no claim to a wrongful conversion.

■ Defendants' claim that the City of Aberdeen's freedom of speech was restricted by the court's order of August 14, 1974, enjoining defendants from advising plaintiff's customers to seek an accounting from plaintiff is moot. Since a determination of such claim is not necessary to this action, we do not pass on it. We also feel that as a matter of "convenience based on prac-

tical necessity" the trial court did not abuse its discretion in permitting exhibits dealing with customers residing beyond the corporate limits of the City of Aberdeen. Hotovec v. Howe, 1961, 79 S.D. 337, 111 N.W.2d 748, 749.

 The manner of making refunds to plaintiff's customers, including the named defendants and the residents of Aberdeen, for overcharges should be according to the provisions of Ordinance 741. Paragraph 6.(a) provides in part:

> "The seller shall keep accounts from which may be segregated any amounts collected in excess of the approved rates and charges. Any request of any customer made to the seller, at its office in Aberdeen, the seller shall state separately to such customer the amount of additional charge permitted by reason of this temporary adjustment procedure. If the proposed increase in rates be disapproved by the governing body, or approved in part only, the seller, shall, within a reasonable time after notice of such action of the governing body, repay to each customer any and all amounts which the seller has received in excess of the rates and charges as finally approved by the governing body."

Plaintiff stressed at trial and in its brief that it maintained separate customer accounts in compliance with this section. Plaintiff also stated that from these accounts the amount of increase for each individual customer could be determined. Therefore the trial court correctly ruled that refunds should be made on an individual basis. The lump sum method advocated, although less costly, would be inequitable and would require someone other than plaintiff to distribute these funds. Ordinance 741 requires the seller to pay the refunds and, if the records have been kept as required, the seller is in a much better position to do so than anyone else.

The order and judgments of the trial court are affirmed in part and reversed in part consistent with this opinion.

WINANS and WOLLMAN and COLER, Justices, and

FOSHEIM, Circuit Judge, concur.

FOSHEIM, Circuit Judge, sitting as a member of the court.