Calvin L. MOULTON, Herma Marsden, Franklyn Craft, R.C. Stensen, Harold Ramse, Kenneth Harrod, Mary Kuppinger Jordon, and Adelaide M. Ward, on behalf of themselves and all of the Cabin Owners within Custer State Park, Custer County, South Dakota, similarly situated, Plaintiffs, Appellants (#15373, 15374), and Appellees (#15382, 15384),

v.

STATE of South Dakota, the South Dakota Department of Game, Fish and Parks; the South Dakota Game, Fish and Parks Commission; and John Cimpl, Robert Ingle, Walter Black, Owen Wipf, Harvey Thayer, Robert Reder, Marlon Thielsen and David Brost, individually, and in their capacity as members of the South Dakota Game, Fish and Parks Commission, Defendants and Appellees (#15373),

The South Dakota Game, Fish and Parks Commission, Appellee (#15374, 15379),

State of South Dakota, and the Department of Game, Fish and Parks of the State of South Dakota, Appellants (#15382).

Nos. 15373, 15374, 15379, 15382 and 15384.

Supreme Court of South Dakota.

Argued Feb. 17, 1987.

Decided Sept. 9, 1987.

Stephen L. Wilson, Roseville, Minn., for plaintiffs, appellants, and appellees Cabin Owners; Jane M. Farrell and Patrick M. Ginsbach of Farrell, Farrell & Ginsbach, Hot Springs, on brief.

Craig M. Eichstadt, Asst. Atty. Gen., Pierre, for defendants, appellees, and appellants State of S.D., Dept. of Game, Fish and Parks, and Game, Fish and Parks Com'n; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

This is a voluminous compilation of appeals and notices of review originally emanating from South Dakota Game, Fish and Parks Commission's (Defendants) decision to not renew cabin site lease permits held by cabin owners (Plaintiffs) in Custer State Park. There are approximately 4,000 pages of record, exhibits and testimony, plus over 300 pages of briefs and accompanying appendices. Following our remand in *Moulton v. State*, 363 N.W.2d 405 (S.D. 1985) (*Moulton I*), the circuit court decided various legal questions presented to it. The following issues are presently before this Court on appeal.

(1) # 15373—Plaintiffs appeal lease non-renewal policy asserting theories of

(a) estoppel regarding alleged ninety-nine-year leases

(b) constitutional law

    1. substantive due process

    2. equal protection

    3. procedural due process

    4. 42 U.S.C. § 1983

(c) environmental protection

(2) # 15382—Defendants appeal circuit court's dismissal of Plaintiffs' administrative appeal addressing termination of cabin permits

# 15384—Plaintiffs file notice of review

(3) # 15374—Plaintiffs appeal circuit court's dismissal of their appeal from Commission's 1984 decision to raise cabin site rentals

# 15379—Defendants file notice of review

These issues are treated seriately. Respectively, we reverse and remand for trial, reverse and remand with instructions, and reverse.

## FACTS

We refer to the facts in our prior opinion, *Moulton I*, 363 N.W.2d 405. Recapitulating, Custer State Park Board was created in 1919, and authorized, legislatively, to purchase lands designated as Custer State Park. Custer State Park Board was abolished and replaced by the South Dakota Park Board in 1939 which itself was, in 1945, transformed into the Department of Game, Fish and Parks.

Beginning in 1921, erection of cottages within Custer was encouraged. Structures built were owned by individuals while the land upon which cabins rested remained state property. It appears that some original cabin owners may have been offered ninety-nine-year leases by Park officials and this is indicated by affidavits, a deposition, and in two instances by written lease agreement. A former Park official, E.L. Burns, who served from 1937 non-inclusively to 1946, noted that cabin site leases during those periods did not contain a fixed term of years and only detailed the amount of the annual lease payment. This former official further stated that the general feeling toward cabin owners was that if they maintained their cabins and broke no park rules, their cabins would not be disturbed. Subsequent leases (dating from approximately 1949) contained terms of ten or five years.

In 1966, the legislature amended the South Dakota Code to repeal that section containing an expressed legislative policy of encouraging private cabin sites in Custer State Park. At a meeting held in December 1967, the Game, Fish and Parks Commission (Commission) decided to terminate private cabin site leases in Custer State Park effective December 31, 1982. Cabin site lessees were not given advance notice of this meeting, but were apprised of Commission's decision to discontinue cabin leases. All lease permits issued in 1978 contained a provision that they would not be renewed beyond December 31, 1982. Some cabin owners objected to the nonrenewable leases but they later relented upon learning that the alternative to not signing was a failure to renew for any period at all.

In 1978, cabin owners organized an unincorporated association designed to explore alternatives to removing cabins from Custer State Park. A lawsuit was filed in 1980 challenging Commission's December 1967 decision. In 1981, the parties entered into a stipulation for dismissal of this lawsuit, which provided that Commission's 1967 decision to terminate cabin site leases was only a statement of policy, not binding on the present Commission. Commission met on June 4 and 5, 1982 to again consider cabin site leases within Custer State Park. On June 5, 1982, Commission unanimously voted to allow all leases to terminate December 31, 1982.

On June 15, 1982, some cabin owners filed a Notice of Appeal to Commission's decision. This action triggered events which led to this Court's decision in *Moulton I*. Encapsulating, in *Moulton I*, we held *inter alia:*

(1) The abandonment of legislative policy "encouraging" private cabin sites meant that cabin leases may be terminated at Commission's discretion; and

(2) Subsequent lease agreements for a term of years signed by one Kenneth Harrod supersede prior lease agreements, and oral representations must yield to written contracts.

While we were deciding *Moulton I*, Commission, in 1984, increased annual cabin site rents from $35 to $375–$500. Upon remand, the circuit court ruled as follows:

(1) Granted State's Motion for Summary Judgment holding that Commission's decision to discontinue lease renewal

policy was valid, and estoppel, constitutional, and environmental protection claims raised by cabin owners were unpersuasive. Plaintiffs appeal.

(2) Dismissed Plaintiffs' administrative appeal (without prejudice) concerning Commission's June 1982 decision not to renew cabin site leases. Defendants appeal. Plaintiffs file notice of review.

(3) Dismissed Plaintiffs' administrative appeal regarding the 1984 rent increase on the theory that contested case procedure was not applicable. Plaintiffs appeal. Defendants file notice of review.

These appeals and notices of review were consolidated for presentation before this Court.

## DECISION

### I.

### ESTOPPEL

Plaintiffs contend the circuit court erroneously granted Defendants' Motion for Summary Judgment. They urge, based upon the settled record, that Defendants should be estopped from denying the validity of the ninety-nine-year leases or, in the alternative, that we reverse and remand because genuine issues of material fact exist as to whether estoppel may be asserted in this situation. Defendants counter that (a) there exists no substantial evidence of record that such leases existed or that promises of leases were made; (b) no estop-

pel of a state government entity is possible under South Dakota law; and (c) our prior holding in *Moulton v. State,* 363 N.W.2d 405, 408–09 (S.D.1985), strongly implies preclusion of Plaintiffs' estoppel claim. We are convinced that genuine issues of material fact exist and we reverse and remand for trial.

a. Whether ninety-nine-year leases were offered to Plaintiffs is a genuine issue of material fact.

As to the existence of ninety-nine-year leases or promises of same, the record is sketchy. Filed, are five affidavits and one deposition from Plaintiffs all stating that promises of ninety-nine-year leases were made.[1] Additionally, attached to Kenneth Harrod's affidavit is a "Term Occupancy Permit" dated June 24, 1939, issued by Custer State Park Board, which gives to Rose M. Hutchins Briggs (a Harrod predecessor) permission to use cabin site land "for a period of 99 years from date hereof[.]" Another "Term Occupancy Permit" in identical form to the one above, was issued to the School and Public Land Department; a lease term of ninety-nine years is specified. In years prior to 1949, in most instances, no specific term of years appears on the "Term Occupancy Permit";[2] rather, that space was left blank. An affidavit by E.L. Burns, an Assistant Superintendent and later Superintendent of Custer State Park non-inclusively from 1937 to 1946, recites that "the general feeling toward the cabin owners ... was that as long as [they] maintained their cabin sites in a satisfactory condition and did not violate any park

1. The settled record includes affidavits from:
   (1) Kenneth Harrod—purchased on September 27, 1977, and notes his immediate predecessor's permit did not contain a ninety-nine-year provision but that person had the "understanding" that the original owner had such a lease.
   (2) Violet Sweem—purchased in 1945 and "understood that cabin owners who took care of their cabins had a 99 year lease."
   (3) Helen Kuppinger—purchased on May 4, 1933 (transferred from Byron Clark) and was told by E.B. Adams, head of Custer State Park Board, and subsequent Park Superintendents that she had a ninety-nine-year lease.
   (4) Adelaide Ward—purchased in approximately 1930 because she was promised a ninety-nine-

year lease by a Mr. Snow, and by later representatives of the South Dakota Department of Game, Fish and Parks.
   (5) Franklyn Craft—his father purchased in 1930 and his parents "understood from communications with park officials that they had a 99 year lease on this cabin site."
   Harriet Popowski, via deposition, testified she and her husband purchased in 1932 and were told by State Forester Schumacher and a state employee named Mr. Fetzer that they had a ninety-nine-year lease.

2. Only after 1949 were specific renewal periods indicated as a matter of course.

rules or regulations, the cabins would not be bothered." Therefore, we do not agree with Defendants that the record is devoid of evidence supporting ninety-nine-year leases.

■ Defendants alternately claim that any evidence existing is rendered useless by virtue of its hearsay status. This assertion is erroneous. "Term Occupancy Permits" issued by Custer State Park Board to both Harrod predecessor Rose M. Hutchins Briggs and to the School and Public Land Department specify that ninety-nine-year leases were offered and accepted. These leases are clearly statements offered against a declarant party (affidavits of Sweem, Kuppinger, Ward, and Craft arguably also contain statements against interest, *see* n. 1 and accompanying text, *supra* ), which has been expressly designated as "not hearsay" by the legislature. SDCL 19–16–3. *See United States v. Moskowitz,* 581 F.2d 14 (2d Cir.1978). We are also mindful of former Park Superintendent Burns' affidavit (although offered by Defendants) which implies that park officials in the 1930's and 1940's anticipated an extremely long-term cabin presence within Custer State Park. Lastly, we realize that absent long-term leases, the possibility exists that cabins would not have been built.

b. Estoppel of a state government entity is possible under South Dakota law.

An estoppel may arise when

[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) of Contracts § 90(1) (1981). Initially, we should observe that " 'estoppels against the public are little favored and should be used sparingly.' " *Sioux Valley Hosp. Ass'n v. Tripp County,* 404 N.W.2d 519, 522 (S.D.1987) (quoting *City of Rapid City v. Hoogterp,* 85 S.D. 176, 179, 179 N.W.2d 15, 17 (1970)). *See*

*Sioux Falls Constr. Co. v. City of Sioux Falls,* 297 N.W.2d 454 (S.D.1980); *Northwestern Pub. Serv. Co. v. City of Aberdeen,* 90 S.D. 627, 244 N.W.2d 544 (1976); *Rhodes v. City of Aberdeen,* 74 S.D. 179, 50 N.W.2d 215 (1951); *Griffis v. State,* 69 S.D. 439, 11 N.W.2d 138 (1943). " '[M]ere ... acquiescence is not sufficient to permit an estoppel. *Some affirmative action* must have been taken upon which the other party acted in reliance and substantially changed his position.' " *Sioux Valley Hosp. Ass'n,* 404 N.W.2d at 522 (emphasis added) (quoting *Northwestern Pub. Serv. Co.,* 90 S.D. at 637, 244 N.W.2d at 549). *See Hoogterp,* 85 S.D. at 179–80, 179 N.W.2d at 16–17; *Missouri River Tel. Co. v. City of Mitchell,* 22 S.D. 191, 199, 116 N.W. 67, 70 (1908). Also, "[t]he burden of proving the elements of affirmative action, reliance and change of position is upon the party contending the legal right is waived." *Northwestern Pub. Serv. Co.,* 90 S.D. at 637, 244 N.W.2d at 549 (citing *Aune v. City of Mandan,* 167 N.W.2d 754 (N.D.1969)). *See Sioux Falls Constr. Co.,* 297 N.W.2d at 459 (quoting *Hoogterp,* 85 S.D. at 180, 179 N.W.2d at 17).

However, this Court has observed that estoppels may be applied against the public " 'when exceptional circumstances demand their application to prevent manifest injustice.' " *Sioux Valley Hosp. Ass'n,* 404 N.W.2d at 522 (quoting *Hoogterp,* 85 S.D. at 180, 179 N.W.2d at 17). *See Heckler v. Community Health Servs.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *Tosco Corp. v. Hodel,* 611 F.Supp. 1130 (D.C.Colo. 1985); 28 Am.Jur.2d *Estoppel and Waiver* § 123 (1966); 31 C.J.S. *Estoppel* § 140 (1964). Furthermore, "no branch [of government] is entirely immune from scrutiny. The courts must weigh the degree of manifest injustice against the effect, in the particular case, of intervention into the public processes.... There is no rule of thumb." *Eden v. Board of Trustees of State Univ.,* 49 A.D.2d 277, 284, 374 N.Y. S.2d 686, 692 (1975).

We also remain mindful that estoppel was successfully applied against a state governmental entity in *Northern Improve-*

*ment Co. v. South Dakota State Highway Comm'n,* 267 N.W.2d 208 (S.D.1978). *See also Missouri River Tel. Co.,* 22 S.D. at 199–200, 116 N.W. at 70. In *Northern Improvement,* we held that South Dakota State Highway Commission (Defendant) was estopped from claiming that a written order was a necessary precursor to an enforceable modification of the contract existing between Northern Improvement Company, a highway construction contractor (Plaintiff) and Defendant, when Plaintiff had numerous discussions with Defendant's engineers, concerning additional work and pay, and when those engineers were given broad discretionary powers by the contract. In distinguishing this case from others in which estoppel arguments failed, we pointed out that Defendant's engineer was granted broad discretionary powers; i.e., Defendant's engineer was acting within the scope of his authority. *See Northern Improvement,* 267 N.W.2d at 214.

Defendants attempt to distinguish *Northern Improvement* from our present case in three ways. First, Defendant's engineer in *Northern* was vested, contractually, with great discretionary power and Custer State Park Board members were not. Second, *Northern* was a situation where a public improvement (highway) was being constructed involving interplay between State's engineers and highway contractors, a relationship which approximates contracting between private parties, whereas the Commission's decision regarding parklands is a discretionary one involving execution of public policy. Third, in *Northern,* there was no subsequent written contract and in the present case, nonrenewable lease permits were offered to, and signed by, all cabin owners.

■ Defendants' argument is unpersuasive. First of all, there is sufficient evidence in the record to raise a question of fact concerning whether ninety-nine-year leases were offered to cabin owners.[3] These offers could constitute compliance with the affirmative act requirement discussed earlier. *See Sioux Valley Hosp. Ass'n,* 404 N.W.2d at 522; *Sioux Falls Constr. Co.,* 297 N.W.2d at 459; *Northwestern Pub. Serv. Co.,* 90 S.D. at 637, 244 N.W.2d at 549. If the fact finder believes Plaintiffs' version of the facts, it may adopt the position, that the Board, *in toto* approved of the ninety-nine-year leases offered by various Park personnel.[4] We believe the evidence is sufficient to raise a genuine issue of material fact as to whether Board authorized the offering of ninety-nine-year leases inducing Plaintiffs' reliance and resulting in a change of position which culminated in cabin erection. *See Sioux Valley Hosp. Ass'n,* 404 N.W.2d at 522; *Sioux Falls Constr. Co.,* 297 N.W.2d at 459; *Northwestern Pub. Serv. Co.,* 90 S.D. at 637, 244 N.W.2d at 549; *Hoogterp,* 85 S.D. at 179–80, 179 N.W.2d at 16–17. In any event, the settled law of South Dakota permits estoppels to be applied against the public if the facts warrant such a result.

c. Our holding in *Moulton I* does not preclude Plaintiffs' estoppel claim.

■ Defendants point out that 1978 cabin site permits, issued by Commission, contained a clause notifying Plaintiffs that all permits terminated on December 31, 1982 and were nonrenewable, and this Court, in *Moulton I,* 363 N.W.2d at 408, essentially wrote that any prior ninety-nine-year leases must yield to subsequent written contracts. Defendants conclude that our own language in *Moulton I* is dispositive of the current controversy. We do not agree.

In *Moulton I,* we specifically declined to address Plaintiffs' estoppel and constitutional law claims as "[t]hese arguments were addressed only in the trial court's

---

3. Specific reference is made to term occupancy permits issued to a Kenneth Harrod predecessor and the School and Public Land Department, both stating that the land may be used "for a period of 99 years from date hereof[.]" *See also* information regarding five affidavits and one deposition set out in footnote 1, *supra.*

4. Unfortunately, all records of the Board's meetings, during this period, are missing. The settled record, however, does contain affidavits, evidence, and a deposition (described in footnote 1, *supra*) indicating that ninety-nine-year leases were offered by a former head of Custer State Park Board, Park Superintendents, a State Forester, and various other Park officials.

memorandum decision, which is not reviewable on appeal." *Moulton I,* 363 N.W.2d at 409 (numerous citations omitted). Unquestionably, Plaintiffs' estoppel and constitutional law claims are now properly before this Court and we refuse to apply the confines and words of *Moulton I* to the present case in which estoppel is properly raised and may be fully considered. We also note the record, which contains affidavits and evidence, alleging that Plaintiffs were forced to sign the 1978 nonrenewable agreements or forfeit all cabin site rights. Plaintiffs' estoppel argument bolsters the assertion that this was nothing more than Defendants' unilateral modification of existing lease agreements to which Plaintiffs agreed because no other viable choice was offered.

Therefore, the circuit court erred in granting Defendants' Motion for Summary Judgment concerning the estoppel issue. We hold that genuine issues of material fact exist as to (1) the existence of ninety-nine-year leases; (2) the present effect, if any, of those leases; (3) the impact, if any, of Plaintiffs' signing of 1978 nonrenewable agreements on prior lease agreements; and (4) the right of succession of present cabin owners. We reverse and remand for resolution of these factual inquiries.

## II. AND III.

### CONSTITUTIONAL AND ENVIRONMENTAL CLAIMS

Plaintiffs advocate that Defendants' termination of cabin site leases resulted in the following constitutional violations.

1. Substantive Due Process

2. Procedural Due Process

3. Equal Protection

4. 42 U.S.C. § 1983.

They also assert that the decision to terminate cabin site leases will be injurious to the environment in that removal of cabins will cause permanent damage.

We view resolution of the estoppel issue and its related inquiries a necessary prerequisite to any review of these claims. If Plaintiffs are successful in proving their estoppel cause of action, environmental and constitutional claims may be rendered moot. Also, because termination of cabin site permits was never previously considered by this Court from a constitutional posture, we observe that there is a difference between an initial grant of a permit and the termination of a permit once granted. Due process requirements accompanying each situation vary and may be further affected by the factual findings entered at the circuit court level. As these claims are not judicially ripe, we therefore decline to specifically address them [5] and leave their resolution, if necessary, to the circuit court upon remand.

## IV.

### ADMINISTRATIVE APPEALS

First Administrative Claim.

■ Appeal was taken to the circuit court addressing Commission's June 1982 decision to terminate cabin site leases in Custer State Park. The circuit court found that Commission had not entered findings of fact and conclusions of law as mandated by SDCL 1-26-25. Moreover, pursuant to SDCL 1-26-30.1, the circuit court decided that Plaintiffs should have filed a proposed

---

**5.** Plaintiffs filed suit in Federal District Court under 42 U.S.C. § 1983. On September 5, 1986, United States District Court, District of South Dakota, the Honorable Richard H. Battey presiding, issued a Memorandum Opinion and Order denying Defendants' Motion for Summary Judgment. The court ruled that this matter was not ripe for summary judgment as genuine issues of fact are yet to be found and constitutional implications may arise which would affect the termination of cabin permits once granted, especially if a property right exists. The federal court denied abstention, noting that the South Dakota Supreme Court did not specifically address Plaintiffs' constitutional arguments.

State appealed to the Eighth Circuit Court of Appeals contending that Judge Battey's implicit denial of their qualified immunity defense is immediately appealable. On January 26, 1987, the Court of Appeals, in a per curiam decision, remanded the case to the district court for a ruling on the qualified immunity issue. *Craft v. Wipf,* 810 F.2d 170 (8th Cir.1987). On remand, the district court reaffirmed its denial of Defendants' motion for summary judgment.

decision including findings of fact and conclusions of law with Commission. Since this filing was not accomplished, Plaintiffs' administrative appeal was dismissed without prejudice. Defendants appealed advocating that the dismissal should have been with prejudice. Plaintiffs filed notice of review contending Commission's decision to terminate cabin site leases was a contested case, and the circuit court erred when it did not remand the 1982 administrative appeal to Commission and require it to make findings of fact and conclusions of law. We agree with Plaintiffs and reverse the circuit court's decision and remand to the court with instructions.

The crux of Plaintiffs' argument is that Commission *must* comply with contested case procedures of the Administrative Procedure Act. The key to identifying a contested case is whether "rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing...." SDCL 1–26–1(2) (*quoted in Carlson v. Hudson,* 277 N.W.2d 715, 717–18 (S.D.1979)). There are three methods by which a hearing may be "required by law": (1) statute; (2) agency rule; or (3) due process constitutional mandate. *Carlson,* 277 N.W.2d at 718 (citing *Valley State Bank v. Farmers State Bank,* 87 S.D. 614, 621, 213 N.W.2d 459, 463 (1973)).

We are convinced, in the present case, especially when viewed against the backdrop of unsettled facts, that Commission was required by law, via due process constitutional mandate, to grant Plaintiffs a hearing before termination of cabin site permits. SDCL 1–26–1(2). Contested case provisions should have been utilized and although Commission did give Plaintiffs a hearing, absent findings of fact and conclusions of law, a formal Commission decision never existed. *Johnson v. Skelly Oil Co.,* 359 N.W.2d 130 (S.D.1984); *Department of Pub. Safety v. Eastman,* 273 N.W.2d 159 (S.D.1978); SDCL 1–26–25.[6]

■ We also hold that the circuit court misinterpreted SDCL 1–26–30.1.[7] A party is not commanded to file a proposed decision when an agency fails to act in a contested case. Instead, the statute, by its plain terms, stated that an agency's failure to make and file a decision "*shall entitle* a person ... to appeal" and "such person *may* present to the agency a proposed decision...." SDCL 1–26–30.1 (emphasis added). The words "shall entitle" and "may" are permissive and indicate that Plaintiffs could have proceeded in that fashion if they so chose. *See Sioux Valley Hosp. Ass'n v. Bryan,* 399 N.W.2d 352, 354 (S.D.1987). *See also In re Silver King Mines,* 323 N.W.2d 858, 860 (S.D.1982) (where we noted "that SDCL 1–26–30.1 *allows* appeals from an inferred decision....") (emphasis added).[8]

**6.** SDCL 1–26–25 in pertinent part states:
A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. It may affirm, modify, or nullify action previously taken or may direct the taking of new action within the scope of the notice of hearing. It shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

**7.** SDCL 1–26–30.1, as then appearing, provided:
The failure of any agency to make and file a decision within a period of thirty days after any matter has been finally submitted to it, shall entitle a person authorized to appeal from the record then existing the same as if the decision had been made adversely to him in whole or in part, unless within such time the agency shall make and serve upon all the parties to the record, an order extending such

time for an additional period of not to exceed sixty days, which order shall state the grounds or reasons why such extension is necessary. At the expiration of said thirty days or the time to which extended by such order, such person may present to the agency a proposed decision, and if the same be not adopted within five days after presentation for filing, such person may appeal the same as if such proposed decision had been denied. This section shall not apply to contested cases determined by the public utilities commission.
SDCL 1–26–30.1 was amended by 1986 S.D. Sess.Laws ch. 27, § 3. Minor revisions were made which do not alter the permissive nature of this statute.

**8.** Plaintiffs, attempting to comply with the circuit court's application of SDCL 1–26–30.1, served proposed Findings of Fact and Conclusions of Law on Commission on April 18, 1986. Commission elected, at a June 27, 1986 meeting, to take no action on the proposed decision.

■ Additionally, Plaintiffs' cabin site leases are plainly licenses, defined by SDCL 1–26–1(3) as "includ[ing] the whole or part of any agency permit, certificate, approval, registration, charter, or similar form of permission required by law[.]" *See generally* 1 Am.Jur.2d *Administrative Law* § 140, at 949–50 (1962); 53 C.J.S. *Licenses* § 1 (1948). As per SDCL 1–26–27, "[w]hen the grant, denial, or renewal of a license is required to be preceded by notice and opportunity for hearing, or an applicant, a party or an agency requests a hearing, the provisions of this chapter concerning contested cases apply." Contested case provisions are presently applicable on the dual grounds that (1) Commission action was required to be preceded by notice and opportunity for hearing; and (2) Plaintiffs requested a hearing addressing Commission's termination decision.

Accordingly, we reverse the circuit court's ruling and remand to the court directing it to remand the case to Commission for preparation of findings of fact and conclusions of law. The circuit court is also instructed to stay proceedings relating to Plaintiffs' estoppel and other claims pending receipt of findings and conclusions from Commission.

Second Administrative Claim.

■ This claim involves Commission's March 1984 decision, made at a meeting in Rapid City while *Moulton I* was before this Court, to increase cabin site rents from $35 to $375–$500 yearly. Plaintiffs appealed to the circuit court pursuant to SDCL ch. 1–26 alleging they were entitled to a hearing as rental increases constituted a contested case. The circuit court, ruling that a contested case did not exist, dismissed Plaintiffs' appeal. Plaintiffs appeal to this Court advocating that a contested case does exist. Defendants filed notice of review alleging that Plaintiffs possess no property interest which is an element necessary to trigger the contested case procedure of SDCL ch. 1–26 and although the circuit court correctly dismissed Plaintiffs'

appeal, it did so for the wrong reason. We hold that the 1984 cabin site rental increase was improper, which renders resolution of whether said increase is a contested case unnecessary.

In our discussion of Plaintiffs' first administrative claim, we identified termination of cabin site leases as a license proceeding requiring application of contested case provisions. This Court, in *Silver King*, 323 N.W.2d 858, set forth the rule that an existing license remains intact " 'until the entire appellate process is completed by the courts.' " *Id.* at 860 (*quoting In re Silver King Mines*, 315 N.W.2d 689, 693 (S.D.1982) (Morgan, J., dissenting)). Consequently, Commission's 1984 rental increase, instituted during the pendency of *Moulton I*, 363 N.W.2d 405, was improper. Further, Commission is also precluded from increasing cabin site rents until a final determination is entered in this matter. *See Silver King*, 323 N.W.2d at 860.

Due to our method of disposition of this administrative claim, we need not decide if Commission's 1984 rental increase mandates implementation of contested case provisions. We do, however, express that modification of cabin site permit terms has characteristics of a license proceeding through which contested case provisions may be triggered, upon request, to the agency, for a hearing. *See* SDCL 1–26–27.[9] If Plaintiffs do succeed on their estoppel claim, they would be well advised to exhaust administrative remedies before redress is sought in the courts. *See* SDCL 1–26–30.

Lastly, we wish to state that while a plethora of facts were advocated by both parties, no findings of fact nor conclusions of law were ever entered by an administrative agency or a circuit court. Simply put, the facts have never been found, making resolution of legal claims well nigh impossible. It is this total absence of fact-finding which demands that issues one and two (as identified in the Procedural History/Issues section of this opinion) be reversed and

---

9. Curiously, Plaintiffs never appealed to Commission concerning increased rental fees; they took their appeal directly to the circuit court.

remanded in accordance with the dictates of this decision. Issue three is reversed.

MORGAN, SABERS, and MILLER, JJ., concur.

WUEST, C.J., dissents.

WUEST, Chief Justice (dissenting).

I dissent. We decided this case once. *Moulton v. State*, 363 N.W.2d 405 (S.D. 1985). Now with a change of personnel on this Court, that decision is being reversed.

As Chief Justice Fosheim wrote for the majority in *Moulton I*, all permits signed in 1958, 1962, 1968, and 1973 contained the provision: "If the Commission determines that the area covered by this permit has a higher priority for public use other than as a summer-home site, the Commission reserves the right to cancel this permit upon said expiration date." He further wrote:

> "The 1978 written contract between cabin owners and the Commission called for expiration of permits in 1982. The first paragraph of the 1978 cabin permits provided "THIS PERMIT WILL NOT BE RENEWED–THE ABOVE FIVE YEAR TERM WILL CONCLUDE THE STATE'S POLICY OF ALLOWING PRIVATE SUMMER HOME SITES IN THE PARK." Paragraph 20 provided "It is agreed and understood that THIS PERMIT EXACTLY TERMINATES ON DECEMBER 31, 1982 AND IS NOT RENEWABLE AFTER THE EXPIRATION OF THIS TERM." The cabin owners, including Mr. Harrod, all signed a permit with this provision."

These new contracts supersede prior lease arrangements, *See South Hanson Lumber Company v. DeMoss*, 253 Iowa 204, 111 N.W.2d 681 (1961), and any oral representations must yield to subsequent contracts. *Id.; See also*, SDCL 53–8–7.

This court specifically held any prior lease agreements were superseded by the new permits and any oral representations must yield to subsequent written contracts. Having accepted the benefits of twenty-four years of permits—1958 through 1982—the cabin owners repudiate the agreements they signed and claim the State should be estopped.

Although the estoppel issue was not precluded by our decision in *Moulton I*, estoppel is not applicable to the facts in this case. Estoppel against the public is little favored and should be used sparingly. This Court has applied an estoppel against a state governmental entity on only one occasion. *Northern Improvement Company, Inc. v. South Dakota State Highway Commission*, 267 N.W.2d 208, 214 (S.D.1978). The Court did not overrule its prior decisions which held that estoppel against the State is little favored and is to be invoked only in unusual circumstances. *Griffis v. State*, 69 S.D. 439, 11 N.W.2d 138 (1943). *See also, Northwestern Public Service Company v. City of Aberdeen*, 244 N.W.2d 544 (S.D.1976); *City of Rapid City v. Hoogterp*, 85 S.D. 176, 179 N.W.2d 15 (1970); *Rhodes v. City of Aberdeen*, 74 S.D. 179, 50 N.W.2d 215 (1951). In *Northern Improvement* the situation was unusual in that the written contract specifically provided for a great deal of discretion in the state engineer, and in district engineers. The fact situation was also clear, and there were *no subsequent written contracts negating the plaintiff's position. Finally, the matter dealt with contracting for producing a public improvement.* That situation was analogous to contracting between private parties. The other cases cited dealt with discretionary acts in executing public policy, as does this case. They were thus not analogous to the relationship between private contracting parties, to which § 90 of the Restatement ordinarily applies.

It is impossible to comprehend how this Court can hold there are unusual circumstances justifying estoppel against the people of this State when the cabin owners signed permits knowing they could be cancelled and when the last permit expired December 31, 1982. After accepting the benefits for twenty-four years, this Court holds there are facts to be litigated on the estoppel issue. In my opinion, that decision is contrary to the facts and the settled law of this state, and is arbitrary and capricious.

Plaintiffs claim constitutional violations because the State did not renew their permits. By the terms of the last five-year permit it expired on December 31, 1982. The cabin owners had no property interest subject to due process, equal protection, or 42 U.S.C. § 1983. Before those provisions apply, there must be a deprivation of liberty or property interests. *Carlson v. Hudson*, 277 N.W.2d 715 (S.D.1979).

Lastly, the cabin owners appeal because the rent was raised from $35.00 to $375–$500 yearly by the Commission. The trial court dismissed this appeal from the Commission, ruling that a contested case did not exist. Although the trial court may have ruled right for the wrong reason, I would affirm because the cabin owners had no property interest once their permits expired on December 31, 1982, and a property interest is necessary to trigger the contested case procedure of SDCL ch. 1–26.

I would affirm the trial court on all issues.