F. Pitkin SMITH, Mary W. Avant, et al.,
Plaintiffs and Appellees,

v.

CITY OF RAPID CITY, A Municipal
Corporation, Defendant and
Appellant.

No. 13072.

Supreme Court of South Dakota.

Argued Oct. 17, 1980.

Decided June 24, 1981.

Wayne F. Gilbert of Gunderson, Farrar, Aldrich, Warder & DeMersseman, Larry M. Von Wald, Rapid City, for plaintiffs and appellees; James H. Wilson of Wilson, Bottum, Olson, Goodsell & Nash, Rapid City, on the brief.

Ray E. Woodsend, City Atty., and Kenneth L. Heisterkamp of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for defendant and appellant; James S. Nelson of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, on the brief.

BERNDT, Circuit Judge.

This appeal involves an attempt by the city of Rapid City, defendant and appellant, to annex an area in which plaintiffs and appellees reside or have a property interest. Plaintiffs challenged the validity of the city's annexation resolution and sought to enjoin the city from enforcing the resolution. The trial court concluded that the city had failed to fulfill certain statutory requirements and declared the annexation resolution void, permanently enjoining the city from enforcing the resolution. We affirm in part and reverse in part.

This appeal brings the 1979 amendments to the annexation statutes to this Court for the first time.[1] In the latter part of 1979,

---

1. The following 1979 amendments to the annexation statutes are involved in this appeal:

SDCL 9–4–4.1—Except as provided by § 9–4–1, before a municipality may extend its boundaries to include contiguous territory, the governing body shall conduct a study to determine the need for the contiguous territory and to identify the resources necessary to extend the municipal boundaries.

SDCL 9–4–4.2—Based on the study, provided for in § 9–4–4.1, the governing body may adopt a resolution of intent to extend its boundaries. The resolution shall contain the following:

(1) The description and boundaries of the territory to be annexed;

(2) That ample and suitable resources exist to accommodate the orderly growth or development of the contiguous territory;

(3) That municipal utilities and a major street network are considered in terms of the proposed boundary extension and that there is a definite timetable upon which municipal service will be extended into the contiguous territory;

(4) The approximate cost of the extended service to the residents of the contiguous territory and the municipality;

(5) The estimated difference in tax assessment rate for the residents in the contiguous territory;

(6) The time and place of a public hearing on the intention of the governing boundary [sic] to extend the municipal boundaries;

(7) That exclusions and irregularities in boundary lines are not the result of arbitrariness;

(8) That there is reasonable present or demonstrable future need for annexing the contiguous territory; and

(9) That population and census data indicate that the municipality has or may experience

the city began annexation proceedings to annex what is commonly known in Rapid City as the Deadwood Avenue area. The final resolution of annexation was adopted in December 1979.

The Deadwood Avenue area consists of approximately 2,487 acres. The area contains two residential developments, consisting of approximately thirty-one residences, the State Cement Plant, some manufacturing, and some eighty-eight commercial and industrial enterprises. Although the terrain and elevation are irregular, there are no significant physical barriers between the area and the city. The residential areas and the businesses are all served by their own private on-site water and sewer systems. The area is mostly independent of municipal services. Several of the industries provide services and materials to the city on a contract basis. Other benefits inure to the area because of its proximity to the city.

The city desires to annex the area for several reasons. Already bounded on three sides by the present city limits, the area falls within the city's path of orderly growth and development. Further, the city seeks to alleviate the inequitable situation where, because of plaintiffs' proximity to the city, they receive municipal benefits without contributing to the city's revenues. The city also asserts that the Deadwood Avenue area should be concerned about the economic vitality of Rapid City, and that the city needs to diversify its economic base.

Plaintiffs have resisted defendant's prior attempts to annex the area and contend that, in its current attempt at annexation, the city has failed to comply with the statutes. Before evaluating the alleged transgressions, we will briefly summarize the statutory procedure and the purpose behind the statutes.

The annexation process begins with a study conducted by the governing body to determine the need for the contiguous territory and to identify the resources necessary to extend the municipal boundaries. SDCL 9–4–4.1. Based on the study, the governing body may adopt a resolution of intent to extend its boundaries in accordance with SDCL ch. 9–19 (chapter regulating adoption of municipal ordinances and resolutions). The contents of the resolution shall include, among other things: A description of the area, a showing that ample resources exist to accommodate development of the area; "[t]hat municipal utilities and a major street network are considered in terms of the proposed boundary extension, and that there is a definite timetable upon which municipal service will be extended into the contiguous territory"; the approximate cost of the extended service to the residents of the contiguous territory and the municipality, and the time and place of a public hearing on the intention to annex the area. SDCL 9–4–4.2. The governing body may adopt a resolution of intent to annex after a scheduled hearing and in accordance with SDCL ch. 9–19 (regulating adoption of municipal ordinances). Copies of the adopted resolution of intent must be forwarded by

growth or development beyond its present boundaries.

SDCL 9–4–4.3—The resolution of intent shall be adopted pursuant to chapter 9–19 and copies shall, not less than ten days prior to the date of the public hearing, be forwarded, by registered mail to the county commissioners and the affected landowners. The governing body shall utilize and rely upon the records of the county director of equalization for the purposes of determining the affected landowners.

SDCL 9–4–4.4—The governing body shall hold a public hearing to consider extension of its boundaries within sixty days of the adoption of the resolution of intent provided for in

§ 9–4–4.2. The governing body may adopt an annexation resolution, pursuant to chapter 9–19, within sixty days of the public hearing. The governing body shall consider any objections to the resolution and may adopt it with or without amendments. No amendment may be made affecting any property not described in the original resolution.

SDCL 9–4–4.10—Any person of the annexed area may institute proceedings in the circuit court to compel performance of any aspect of the resolution to extend the municipal boundaries and services. The proceedings shall be instituted within seven years of the adoption of the resolution.

registered mail to the county commissioners and affected landowners in the area at least ten days before a hearing on the resolution of annexation. SDCL 9–4–4.3. The latter hearing must take place within sixty days of the adoption of the resolution of intent. SDCL 9–4–4.4. The procedure for adopting the resolution of annexation also must comport with SDCL ch. 9–19. The voters may require that the annexation resolution be submitted to the voters in the municipality and annexation area for approval. SDCL 9–4–4.5. Once enacted, a resident of the annexed area may institute proceedings to compel performance of the annexation resolution. SDCL 9–4–4.10.

Prior to the 1979 amendments, a resolution of intention to annex needed only to contain a legal description of the territory to be annexed and the time and place of the meeting to consider its adoption.

■ The legislature authorized local governments to annex property in order to facilitate orderly growth and development of the municipality. Because this is an extraordinary power, strict compliance of the annexation statutes is required. *Rhodes v. City of Aberdeen*, 74 S.D. 179, 50 N.W.2d 215 (1951). Thus, flexibility and municipal discretion are limited. The detailed annexation process is required essentially to apprise residents of the ramifications of annexation. As stated by the Montana Supreme Court,

> [T]he essential purpose of a resolution of intention is to: (1) apprise the taxpayers that the city intends to propose a special improvement district; (2) what area will be encompassed in the district; (3) what type and character of improvement will be included within the district; and (4) the cost of the improvements to be made.[2]

Thus, informing the residents is a key element of annexation. Our statutes enable the city and the residents of the area to scrutinize the need for, and the costs of, annexing contiguous territory. The case before us points out potential differences in interpreting our annexation statutes. We will attempt to rectify these shortcomings by resolving the following issues:

## I.

Was the city in its resolution of intent to annex, required to set forth the approximate costs of water and sewer service lines to the existing structures adjacent to Deadwood Avenue, and did it do so? The trial court held that it was required to do so and that it had not. We affirm.

■ Plaintiffs argue that the city was deficient in setting forth the cost of water and sewer service to the entire area, and that the city omitted cost figures on garbage removal, street lighting, and building inspection. Plaintiffs also dispute the city's cost figures concerning police protection, street maintenance and snow removal. The city argues that the statutes do not require a city to estimate the costs of extending all municipal services, because no specific standard for minimum service is prescribed. We agree; however, a city must still furnish those approximate costs that are reasonably available and must include the approximate cost of services which are substantially equivalent in standard and scope to services furnished to persons and property already located within the municipality at the time of annexation. As previously stated, the purpose of annexation statutes is to help apprise the residents of the costs of annexation. The statutes are designed to prohibit annexation by municipalities which are unable to render reasonable services. See *Clarke v. City of Wichita*, 218 Kan. 334, 543 P.2d 973 (1975). To give effect to these policies, a city must make every reasonable effort to give a full and accurate cost approximation. Obviously, a city is unable to approximate costs of extending service to undeveloped areas unless plans for development are available. Similarly, it is difficult to provide cost estimates for services that may not be needed for ten to forty years (which is the life expectancy

---

2. *Koich v. City of Helena*, 132 Mont. 194, 197, 315 P.2d 811, 813 (1957). Although *Koich* dealt with the creation of special improvement districts as opposed to annexation proceedings, we find the underlying purposes, as expressed above pertinent to our decision.

of the water and sewer services presently used in the Deadwood Avenue area). However, the statute clearly requires that the city estimate the costs of major utilities and services to be supplied to residents of the annexed area. In *Clarke*, supra, the court surmised that,

> [T]he legislature of Kansas intended that a city proposing annexation of territory to the city must first prepare and submit a *bona fide* plan covering each major governmental and proprietary service to be furnished the territory to be annexed substantially equivalent in standard and scope to such governmental and proprietary services furnished by the annexing city to persons and property already located [within the city.][3]

The *Clarke* court acknowledged that certain contingencies over which a city has no control would arise.

■ The trial court in the case at hand determined that the city failed to provide for the necessary water service pipes (SDCL 9–47–8(1)) or sewer service pipes (SDCL 9–48–1(1)), as would be required to extend those services from the trunk lines to all of the existing structures in the water and sewer assessment district, which the city must establish to finance such public improvements, pursuant to SDCL 9–48–33. We will not disturb the trial court's finding. The city's own witness admitted that the full costs of extending services were not encompassed in the estimates provided.

There is nothing in the record to indicate that it would have been unreasonable or even difficult, for the city to provide approximate costs for the service lines in question.

## II.

Did the city set forth a definite timetable for extending services to the annexed area, as specified in the resolution of intent (SDCL 9–4–4.2(3))? The trial court held that the city had not done so. We agree.

■ In response to the statutory requirement that the resolution of intent contain a "definite timetable upon which municipal service will be extended," the city's resolution provided that services would be extended to the area "within two years after petition and the taking effect of a resolution of necessity to construct water and sewer improvements ...." The reasons for requiring a "definite timetable" are similar to the reasons for obtaining cost estimates. A timetable provides the residents with information regarding the scheduled development of services in the area. It further provides the residents with an enforceable provision to ensure that the plan for extension of services is carried out. As noted, these provisions are new to South Dakota law. We must give credence to the fact that the legislature saw a need to amend the annexation statutes, and thus we must give due effect to the "definite timetable" requirement. The city argues that its proposed petitioning process for acquiring services satisfies the statute. The proposal, however, is unfounded in statute, ordinance or case law. The city cites decisions from Kansas and Tennessee that held that similarly indefinite proposals satisfied the timetable requirement. See *Clarke*, supra, and *State ex rel. Balsinger v. Town of Madisonville*, 222 Tenn. 272, 435 S.W.2d 803 (1968). It does not appear to us, however, that those statutes required a *definite* timetable. As stated by the trial court,

> The naked reference to a petition in the above-quoted recital of the Resolution of Intent to Annex is so indefinite that it destroys the definiteness of any proposed timetable.... The recital does not state what type of petition would be honored by the City, by whom it must be signed or how many signatures it should bear.

At the bare minimum, a detailed procedure for petitioning for services should have been provided. We affirm the trial court's

---

**3.** 543 P.2d at 985. The provision that the plan be bona fide is significant. In *Voogd v. Joint Drain. Dist.*, 188 N.W.2d 387 (Iowa 1971), a cost estimate turned out to be substantially erroneous; but, because the supervisors had acted in good faith, their action was held to be not entirely void.

holding that the city did not comply with the statute.

### III.

Must a city set forth the recitals of the resolution of intent to annex in the resolution of annexation as well? The trial court held that it must. We affirm.

■ The city drafted its resolution of annexation at the same time that it drafted its resolution of intent to annex the Deadwood Avenue area. Both resolutions were mailed simultaneously to the county commissioners and the affected landowners. The resolution of annexation failed to contain the recital of SDCL 9-4-4.2. Although both resolutions were passed unaltered, the potential for abuse exists unless the interested parties have an opportunity to examine the resolution of annexation after the hearing on the resolution of the intent to annex. For example, in the event that the city had amended its resolution of annexation after the first hearing and the interested parties had received only the original resolution, it is possible that the amended ordinance would be passed without the interested parties having had an opportunity to object to any amendments. More importantly, the enforcement provisions of SDCL 9-4-4.10 pertain only to the resolution of annexation. Thus, unless the resolution of annexation contains the information required in SDCL 9-4-4.2, the enforcement statute may be rendered useless. It is obvious that the annexation resolution must have specific provisions to enforce. We therefore affirm the trial court's ruling that the recitals of SDCL 9-4-4.2 must appear in the annexation resolution.

### IV.

Did plaintiffs waive their rights, and are they estopped from contesting the nature and extent of municipal services to be furnished the annexed area? The trial court held in the negative, and we affirm.

■ The city contends that by failing to appear at the scheduled hearings, plaintiffs are estopped from opposing the annexation. The proceeding before this Court is the culmination of several attempts to annex at least portions of the Deadwood Avenue area over the past few years. Thus, having appeared and objected to annexation on several previous occasions, plaintiffs did not appear and object when hearings on the current resolutions were held. The issue thus raised is whether plaintiffs waived their rights and are estopped from contesting the nature and extent of municipal services to be furnished the annexed area. A continuing controversy existed between the parties. The trial court found that defendant was apprised of plaintiffs' opposition to annexation. Further, plaintiffs were not interested in bargaining for services as counsel for the city suggested they should be. We thus agree with the trial court that plaintiffs were not estopped by their failure to attend and participate in the hearings. Defendant did not rely on plaintiffs' inaction; it cannot be said that plaintiffs voluntarily relinquished their known rights.

### V.

We now address the issues raised by plaintiffs' notice of review.

Did the trial court err in rejecting plaintiffs' proposed findings of fact that defendant's sole motive for annexation was to increase tax revenues? We hold that it did not, and affirm.

■ Plaintiffs contend that defendant's sole motive for annexation was to increase municipal tax revenues. In so arguing, plaintiffs examined the city's expressed motives and concluded that they were all revenue-oriented. " 'The wisdom, necessity or advisability of annexing territory to cities is not a matter for consideration by the courts.' " *Clarke*, supra, at 987, quoting *State ex rel. v. City of Overland Park*, 192 Kan. 654, 391 P.2d 128 (1964). Although we have held that the limits of a municipal corporation should not be extended for the sole purpose of increasing the municipal tax base, *Big Sioux Tp. v. Streeter*, 272 N.W.2d 924 (S.D.1978), we do not find that to be the case here. As noted, the

Deadwood Avenue area is presently bounded on three sides by the city limits of Rapid City. It is thus ripe for annexation purely from the standpoint of "orderly growth and development of the municipal corporation." See *State ex rel. Collier v. City of Pigeon Forge*, 599 S.W.2d 545 (Tenn.1980). Even more, there is a *quid pro quo*; the city is offering its services to the area, which is only a partially developed area. That the proposed area is not in need of municipal services as it exists today does not in itself preclude annexation. The need for city services is not controlling. *Pigeon Forge*, supra; *City of Kingsport v. State, etc.*, 562 S.W.2d 808 (Tenn.1978). If, by being self-sufficient, one could oppose annexation, municipal boundaries would take on an unwanted checkerboard structure. It is possible that future development of the area, or degeneration of existing services will warrant city services. Presently, the city offers police and fire protection, among other municipal services. Granted, one of the city's motives behind annexation is to alleviate inequities that arise from indirect benefits received without cost. Such a motive is not improper. In addressing a similar situation, the Tennessee Supreme Court stated:

> The people and property owners of an area proposed for annexation have neither the moral nor legal right to stand aloof from the incorporated community of which they are a *de facto* part, enjoying most of the benefits, but disclaiming their duty to participate in providing these essential services.

*Pigeon Forge*, supra, at 548. We thus disagree with plaintiffs' conclusions that the city's sole motive is revenue-oriented. We concur with the trial court in ruling that the city has not abused its discretion on the decision to annex.

### VI.

Did the trial court err in holding that defendant had sufficiently complied with the notice requirements of SDCL 9–4–4.-3? We hold that it did.

The city drafted both the resolution of intent and the resolution of annexation at the same time. A public hearing was scheduled on September 4, 1979, on the resolution of intent, and another hearing was scheduled for October 31, 1979, on the resolution of annexation. One notice of both hearings was mailed along with both resolutions on August 21, 1979, prior to adoption of either resolution. The resolution of intent was adopted on September 4, 1979, and the public hearing of October 31, 1979, was held without further notice. Plaintiffs contend that SDCL 9–4–4.3 requires that notice and copies of the resolution of intent be given after adoption of the resolution of intent, and that failure to do so amounted to improper notice. The trial court interpreted the statute to require only one hearing, but held that plaintiffs received sufficient notice by virtue of a copy of the proposed resolution of intent, which was subsequently adopted without alteration. We disagree.

Absent compliance with the statutes, there can be no valid notice. Admittedly, the notice statutes appear confusing. Reference to statutes governing adoption of municipal ordinances in general provide some insight however, as does a strict reading of the statutes. SDCL 9–4–4.2(6) requires that the resolution of intent to annex contain the "time and place of a public hearing *on the intention*" to annex an area (emphasis added); thus, the requirement for the first hearing on the first resolution. After the resolution of intent (which contains the notice of hearing) is drafted and mailed, it is adopted. SDCL 9–4–4.3. A public hearing on adopting the resolution of annexation, as distinguished from the resolution of intent, must be held within sixty days of adopting the resolution of intent (SDCL 9–4–4.4); thus, the second hearing requirement. An additional sixty-day period is given after the second hearing, to adopt the annexation resolution with or without amendment. SDCL 9–4–4.4.

Although the statutes may be unclear, basic notions of due process require that before one's property interests can be abridged, he must have an opportunity to be heard.

The city took the position that two hearings were required, and complied. As we stated, however, the city, by mailing both resolutions simultaneously and without further notice of hearing on the resolution of annexation, could have circumvented plaintiffs' opportunity to object to any amendments that may have been made subsequent to the mailing.

We therefore reverse the trial court's decision on this issue and hold that the city failed to give proper notice as outlined above.

## VII.

■ SDCL 9–4–4.2(3) requires that the resolution of intent contain a "major street network." Plaintiffs argue that the word "major" modifies "network" and thus the city's plan, or network, which basically illustrated without detail the area's highways, was insufficient. We agree with the city that the word "major" modifies "streets." Thus the plan as submitted complied with the statute. The city correctly points out that a governing body cannot map out streets that are as yet nonexistent. By our ruling, we do not mean to minimize this requirement. Where major streets do exist, or are planned, the annexing body must set them forth as a part of the resolution. Again, a city is governed by a mandate to fully apprise affected property owners of annexation plans.

The trial court found that defendant's network (Exhibit A) satisfied the statutory requirement. We cannot set aside a trial court's findings unless they are clearly erroneous. Due regard shall be given to the trial court's opportunity to receive, first-hand, the testimony. SDCL 15–6–52(a).

## CONCLUSION

Because the city failed to meet the statutory requirements for annexation of the Deadwood Avenue area, particularly in failing to provide cost estimates for extending

municipal services and a definite timetable for doing so, the annexation resolution is invalid. The judgment enjoining enforcement of the resolution is affirmed.

MORGAN and FOSHEIM, JJ., concur.

WOLLMAN, C. J., and HENDERSON, J., concur in part and dissent in part.

BERNDT, Circuit Judge, sitting for DUNN, J., disqualified.

WOLLMAN, Chief Justice (concurring in part, dissenting in part).

I join in affirming the trial court's ruling. I disagree with the majority opinion's holding on issue VI, however, because I believe that the relevant statutes, poorly drafted as they are, contemplate only one hearing, and that on the proposed resolution of intent to annex. Implicit in SDCL 9–4–4.4 is the requirement that the proposed resolution of annexation conform with the recitals in the resolution of intent to annex.

HENDERSON, Justice (concurring in part; dissenting in part).

I generally concur in the results of this decision for truly the City of Rapid City (1) provided no time table to establish and furnish services and (2) refused to disclose the basic costs of sewer and water facilities. Essentially, the City of Rapid City would not tell what it was going to do, how much it would cost, or when it was going to act. However, within my concurrence, I disagree with some of the language therein expressed. I cannot agree that there is no significant barrier between Rapid City and the proposed annexed area. Topographically, there exists a long mountain between the City of Rapid City (appellant) and the Deadwood Avenue area (residents of which are appellees). Nor can I agree that the orderly growth of Rapid City is to the west, as indicated by the majority opinion, for to the west there is found mountainous terrain, known as the Black Hills.[1] I would

---

1. The "Black Hills" are not black; they are verdant green. The Black Hills are not hills; they are mountains. In fact, they are the high-

est range of mountains east of the Rockies to the Atlantic Ocean. They cover an area of six thousand square miles. The term "Black Hills"

therefore prick the bubble of the majority's theoretical stance that the area is "ripe for annexation." I deplore the phrase "ripe for annexation." Indeed, now that businesses have pioneered successfully and homes have been constructed in the foothills of the Black Hills (all without services that Rapid City would now paternalistically provide) may this area be described as "ripe," such as a plum to be plucked?

Furthermore, I dissent, in part, as I cannot accept this Court's affirmance of the trial court's rejection of appellees' proposed finding of fact: namely, that appellant's motive for annexation was to increase its tax revenues. The historical background of this case reflects that appellant has an insatiable appetite to accrete, gobble up, tax, and ultimately destroy the autonomy of rural Pennington County. Our courts of law are created to be bulwarks against political excesses. The people have a right to come to the courts for a redress of wrongs perpetrated against them, and particularly when their spirit and property is crushed by government. In the case at bar, the oppressor is municipal government and, within the great system of checks and balances, this Court and every court throughout the land owes its citizens the highest obligation to check any governmental branch or agency that seeks to devour its neighbor.

Although the issue of annexation for tax purposes vis-à-vis annexation for orderly growth[2] is cast in terms of a finding of fact, and this author recognizing the rule that a trial court's ruling and decision is

presumed to be correct, *this presumption of correctness does not exist in this case* because the evidence in question consists entirely of documents. This case, and it is a case of great magnitude and public importance, is a rare bird from a standpoint of an evidentiary platform. See *Johnson v. Johnson*, 291 N.W.2d 776 (S.D.1980). Therefore, as a Justice of this Court, I have the right and duty to review the telltale documents that are on file herein de novo.

The rule that municipal boundaries should not be revamped for purely tax reasons was established early in our state by this Court's decision in *Johnson v. Incorporated Town of Castlewood*, 40 S.D. 493, 168 N.W. 124 (1918). Therein, this Court reversed the refusal of the trial court to grant a petition for exclusion from a municipality. It was apparent from the evidence that the only reason for the municipality's objection to the petition for exclusion was its anticipated loss of revenue.

In *Big Sioux Township v. Streeter*, 272 N.W.2d 924, 926, n.3 (S.D.1978) we held that "the limits of a municipal corporation should not be extended for the sole purpose of increasing the municipal tax base absent the outflow of services and facilities to outlying territory."

From the lips of appellant's mayor, the true motive behind annexation and a revelation as to the extension of services and the collection of tax revenues may be found in Rapid City Common Council minutes, May 24, 1979, found at Clerk's Index 283:

is an absolute contradiction. Paha Sapa, meaning Black Hills, was the Sioux Indian description of these mountains because they appeared black from a distance. To the immediate west of Rapid City, there are deep canyons and gorges carrying spring-fed streams which spill out onto the prairie to the east from heavily timbered mountains. The long mountain to which I refer has been a long-standing problem for the orderly flow of people and commerce into the Black Hills; and it has been a source of numerous engineering studies to determine the feasibility of boring through this long mountain to pour the traffic from the old hay camp of Rapid City (now South Dakota's second largest city) into the mountains which constitute the Black Hills. The geography of an area plays an integral part in determining the directional

growth of any city. Rapid City cannot engulf the Black Hills; they are too rugged and too vast. Furthermore, the United States Government owns the great majority of the Black Hills. For Rapid City to grow immediately west defies reason.

2. In my opinion, a fair reading of the testimony by the city's witnesses indicates that the Deadwood Avenue area development is now proceeding in an orderly manner. Where, then, is the need for municipal intervention? The proposed annexed area is served by its own water and sewer facilities. To use, as a reason, that appellant will provide these services is a facade; it is a Deadwood Avenue "cover-up."

"... We may have trouble saying exactly what the City can do for you but you can certainly do a lot for this City and community by being a part of the City."

Again, appellant's mayor exemplified appellant's true motive at a subsequent meeting by expressing as follows:

"... Again, basically all that we are asking of those people around our City is for them to participate in the cost of running this City for them; not just for the people within the City limit line...."

Rapid City Common Council minutes, September 4, 1979, found at Clerk's Index 329.

Appellant has demonstrated a total lack of commitment to create an outflow of services and facilities to the proposed annexed area in return for an increased tax base. Such a lack of commitment defies the mandate set forth by this Court in *Big Sioux Township v. Streeter*, supra.

According to Webster's Third New International Dictionary, p. 703 (4th ed. 1976), duplicity is defined as "doubleness of heart, thought, speech, or action: deception by pretending to entertain one set of feelings and acting under the influence of another[.]" Appellant suffers from duplicity.