Alois J. KREBS; Jerrold L. Brown; Charles H. Lien; Kenneth Harris; Tracy Building Center; Gerald K. Miller; Joseph A. Krebs; Anthony S. Krebs; Richard A. Todd; Dakota Block Company; Dennis A. Rabe; Horst Masonry and Acoustical; Summit, Inc.; Barber Transportation Company; E.R. McBride; John M. Hillard; Dakota Steel and Supply Company; Paul C. Ness; M.W. Clarkson and C.W. Rand; Pete Lien and Sons, Inc.; and Edwin L. Hubbeling, Plaintiffs and Appellants.

v.

CITY OF RAPID CITY, Defendant and Appellee,

and

Donovan Rypkema, Intervenor and Appellee.

No. 14348.

Supreme Court of South Dakota.

Argued March 19, 1984.

Decided March 13, 1985.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiffs and appellants.

Kenneth L. Heisterkamp of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Robert R. Jackson, Rapid City, for defendant and appellee.

Richard E. Huffman, Rapid City, for intervenor and appellee.

McKEEVER, Circuit Judge.

The plaintiffs (appellants) sought to nullify the annexation of the Deadwood Avenue area to appellee, the City of Rapid City (city). The trial court found that the appellee had properly adopted the resolution of annexation for the Deadwood Avenue area and dismissed appellants' complaint. We affirm.

Prior to this case, the city had attempted to annex the identical area. That attempt resulted in appeal to this court. *Smith v. City of Rapid City*, 307 N.W.2d 598 (S.D. 1981). In *Smith*, this court affirmed the trial court's holding that the city had failed to meet the statutory requirements for annexation and declared the annexation resolution invalid.

In the present case, the city passed a resolution of annexation by which it sought to annex approximately 2,487 acres of land known as the Deadwood Avenue annexation area, which is located generally north and west of the present city limits. Within the area, commercial, industrial and residential sites have been developed. All of the appellants reside in or have property interests in the area sought to be annexed.

There are approximately 120 businesses within the area, most of which draw their clientele from within Rapid City. Those businesses developed, for the most part, as a natural extension of the Rapid City business district.

Three residential developments are also located within the proposed annexation area. Due to the proximity to Rapid City, the residents derive many benefits from the city, including jobs, shopping areas, recreational parks, entertainment opportunities, cultural presentations and governmental services.

The proposed annexation area also contains land for future development and expansion, presently needed by the city. That need results from limited expansion room within the present city boundaries. In fact, the trial court found that the Deadwood Avenue annexation area represents an actual growth of Rapid City beyond its existing boundaries.

■ The trial court made its findings after four days of trial, which consisted of conflicting testimony from fifteen witnesses, as well as the introduction of numerous exhibits. As an appellate court, we review the case not on the basis of what we would have done as trial judges, but on whether the trial judge entered findings that were clearly erroneous. SDCL 15–6–52(a); *Estate of Pierce*, 299 N.W.2d 816 (S.D.1980). With the clearly erroneous rule as our proper standard of review, we shall examine the residents' contentions that the trial court erred in dismissing their complaint.

The first issue is whether this annexation attempt created a homogenous and unified entity and complied with the requirement that the annexation be natural and reasonable. The trial court held that it did, and we affirm.

The annexation statutes addressing the extension of boundaries by resolution speak in terms of "contiguous territory." SDCL 9–4–4.1 and 9–4–4.2. In *Big Sioux Township v. Streeter*, 272 N.W.2d 924 (S.D.1978), this court discussed the requirements that the territory be contiguous to the annexing city and held that contiguity encompasses more than physical touching of boundaries but also encompasses the requirement of the community of interests which necessitates that the annexation be natural and reasonable. The court went on to state that

[a] natural and reasonable annexation may result from the following justifications: a need resulting from the orderly growth and development of the municipal corporation; an outflow of benefits including services and facilities to the outlying territory without a corresponding inflow of monetary contribution for such

benefits resulting in an uncompensated burden to the municipal corporation; or an expressed need that the outlying territory has for services and facilities that the municipal corporation is able and willing to provide.

*Id.* at 926.

In this case, the trial court found that the Deadwood Avenue area is surrounded by the existing city boundaries on three sides: on the west side by the former city limits west of South Dakota Highway 79, on the south by the former city limits along west Chicago Boulevard, and on the east by the former city limits along West Boulevard and that portion of M Hill previously in the city. The presence of approximately 120 businesses in the Deadwood Avenue annexation area in 1982 shows that the area has developed significantly. Many of the businesses and residents came from within the formerly existing city limits. The three residential developments within the Deadwood annexation area include over 130 platted lots.

Testimony further reflected city's need for commercial and industrial sites that would enable Rapid City to prosper. The city has seen substantial growth in population in practically all directions from its corporate limits. The Deadwood Avenue annexation area is more valuable due to its proximity to the city's corporate limits and the area represents an actual growth area of the city beyond its heretofore existing limits. The residents and inhabitants of the annexed area have been deriving benefits and advantages due to their proximity to Rapid City. The area and the city as it previously existed clearly share a common interest. Not only does the city provide customers and work force, but it is also a cultural, recreational, social and commercial center. It is a significant area in the economic vitality of the city. It is not only a place of employment and a source of supply, but the logical site for continued economic development, both industrial and commercial.

Furthermore, the trial court found that the availability of property for residential, commercial and industrial expansion was in short supply within the previous city limits and that the annexation area was needed for the future industrial expansion.

The trial court had sufficient testimony on which to base all of these findings. Consequently, the trial court's determination that the annexation is natural and reasonable, and the municipal body thereby created constitutes a homogenous and unified entity, is not clearly erroneous.

After taking all the evidence on the reasonableness and motivation of the annexation, and ruling in favor of the city, the trial court at the end of the case ruled that this issue had been fully litigated in *Smith* and consequently was res judicata. Appellants maintain this second ruling was also erroneous. In view of our ruling on the first issue, this court finds it unnecessary to treat the res judicata argument. However, this court did recently address this subject in the case of *Black Hills Jewelry Mfg. v. Felco Jewel Indus.*, 336 N.W.2d 153 (S.D.1983).

The next issue appellants raise is that the water services and street lighting offered to the annexation area are insufficient to comply with our state statutory requirements because they are not substantially equivalent to the services provided to the existing city. The trial court held that the services to be provided to the annexation area were sufficient and we affirm.

SDCL 9–4–4.1 mandates that a city conduct a study to identify the various needs of the proposed annexation area. To meet these needs, SDCL 9–4–4.2(2) and (3) require that any resolution of annexation contain a general plan along with a tentative timetable for providing services. This court in *Smith, supra,* in discussing these statutes relied upon *Clarke v. City of Wichita,* 218 Kan. 334, 543 P.2d 973 (1975), in which the Supreme Court of Kansas stated that it was a requirement under their statute that the city provide a "bona fide plan covering each major governmental and proprietary service to be furnished the territory to be annexed substantially

equivalent in standard and scope to such governmental and proprietary services furnished by the annexing city to persons and property already located [within the city]." *Smith, supra,* at 602.

Residents dispute the trial court's finding that the water system as designed for the proposed annexation area is substantially equivalent in standard and scope to that furnished to persons and property within the city. As a basis for their contention, they maintain that the water flow to the Windmill, a business establishment on the north end of Deadwood Avenue, would be 1,600 gallons per minute from the reservoir without pumps as compared to 6,000 gallons per minute at a selected site within the city.

City responds to this argument by reference to the testimony of their expert, Allen Foster, who testified that if one were to rely upon reservoir capabilities only, numerous other areas within Rapid City would not have the water pressure that exists at the intersection of Sheridan Lake Road and Mountain View Road. The high water pressure reading at that intersection results from its proximity to two major water mains and the water treatment plant, as well as its low elevation. Foster further testified that even with the pumps running, the 6,000 gallon-per-minute flow is not available to a large part of the city. He also testified, and appellants' expert witness concurred in this fact, that the 1,600 gallons-per-minute water flow exceeded firefighting guidelines.

■ The June, 1982, Deadwood Avenue area annexation study stated that the city's existing water supply facilities have adequate capacity to accommodate the needs of the Deadwood Avenue annexation area. Foster gave his professional opinion that the city's supply capabilities would be more than adequate to accommodate the annexation area. Thus, the record has ample evidence to support the trial court's finding that the water system offered to the annexation area was substantially equivalent in standard and scope to those furnished to

persons and property in the previously existing city limits.

As to street lighting, the annexation study and resolution recommended the installation of seventeen new street lights of the mercury vapor type for the area. Residents argue that high pressure sodium lights are of a better quality and that those lights have been furnished to the commercial areas of Rapid City in recent history.

From the testimony of Sharon Johnson, the city engineer, the trial court found that the only time high pressure sodium lights were installed was when federal and/or state funding was involved as a part of the street improvement or major repair project. It was also stated that mercury vapor lighting did exist within the city where projects were not at least in part state and/or federally funded. The trial court concluded that the proposed mercury vapor lighting was substantially equivalent in standard and scope to that furnished to persons and property already in the city.

■ Appellants also suggest that the seventeen street lights are not sufficient, but the record does not reveal any substantial evidence which would allow this court to overturn the trial court's finding that the proposed lighting will be adequate. Consequently, the trial court's findings that the water services and street lighting services proposed complied with statutory requirements are not clearly erroneous.

The third issue we will address is whether city made every reasonable effort to furnish the approximate costs that were reasonably available for extending substantially equivalent municipal services.

SDCL 9–4–4.2(4) requires the city to adopt a resolution of intent to extend its boundaries which contain "[t]he approximate cost of the extended service to the residents of the contiguous territory and municipality[.]" In *Smith, supra,* this court stated that a city "must make every reasonable effort to give a full and accurate cost approximation." 307 N.W.2d at 601. This court also stated that the cost approximations must be those that "are

reasonably available and must include the approximate costs of services which are substantially equivalent in standard and scope to services furnished to persons and property already located within the municipality at the time of annexation." *Id.* The issue here then is whether city complied with those requirements.

City provided the estimated costs of water and sewer services for the area as a whole and then at trial broke that figure down to a per-acre cost, depending on whether or not the water and sewer lines were feasible to certain areas. City did not provide the costs to the individual owners of the area.

Residents contend that the city did not make a bona fide effort, or a reasonable effort to apprise them of the probable costs of water and sewer service as to each individual property lot. They further contend that the approximate costs of such services could have been ascertained with minimal effort.

City contends, on the other hand, that it followed the dictates of *Smith* because it furnished the costs that were reasonably available to it. It argues that to obtain estimates on the individual property lots would require more effort and expense than is required prior to actual construction under an assessment project.

■ "[T]he purposes of annexation statutes is to help apprise the residents of the costs of annexation. The statutes are designed to prohibit annexation by municipalities which are unable to render reasonable services." *Smith, supra,* 307 N.W.2d at 601. Here, the statutes do not mandate that a city furnish the exact costs for municipal services, only approximations made after reasonable efforts are required. The trial court heard testimony from expert witnesses for both sides concerning the costs that would be incurred if the city annexed the property and from that testimony held that the city used good faith in hiring experts to provide the estimated costs and that the estimations constituted reasonable compliance with the requirements set forth in *Smith.*

■ We hold that in order to comply with *Smith,* a city must make every *reasonable* effort to give a full and accurate cost *approximation.* *Smith* does not require a city to provide the separate costs that will be incurred to each and every property in the proposed annexation area if such figures are not reasonably available. What is reasonably available depends upon a full spectrum of the circumstances in each individual case. Here, the trial court determined the annexed area to be dynamic in terms of changing development, use and valuation. City used reasonable efforts through the use of experts and through the use of data analysis to give a full and accurate cost approximation. A great deal of additional expense would be required to accept appellants' contention regarding the statutory procedural requirements to be satisfied before actual costs can be determined in relation to this particular annexation area. Even then the city would have to engage in guesswork in predicting the future costs of municipal services in this dynamic area, where valuation is contingent on the use of land that is in the process of development. "A municipality cannot know what fortune or misfortune time will bring." *Clarke, supra,* 543 P.2d at 985. We will not require the city to engage in that type of idle speculation. City furnished approximations of costs made after reasonable efforts to ascertain those costs. The trial court held that city had complied with the holdings of *Smith* and we agree.

The fourth issue is whether the annexation resolution provided the description and boundaries of the territory to be annexed as required by statute. Appellants contend that the description contained in the resolution is insufficient because it does not contain a description by lot, block and legal subdivision. Their argument is premised on the division of the statutory phrase "description and boundaries" into two separate and distinct requirements. Because a metes and bounds description is insufficient for recording deeds in South Dakota, they maintain that a metes and bounds

description is also inadequate in annexation resolutions.

SDCL 9-4-4.2(1) requires that the annexation resolution contain a "description and boundaries of the territory to be annexed[.]" In this case, the resolution of annexation described the territory by a metes and bounds description and by a description of the territory in terms of the Interstate 90 right-of-way, United States Geographical Survey subdivisions, and various platted lots of record. The trial court concluded that this description satisfied the statutory requirements.

■ "The description of the territory should be such that upon a fair and reasonable construction its boundaries should be evident without reference to doubtful rules of legal interpretation." 2 E. McQuillan, *The Law of Municipal Corporations* § 7.31, at 436 (3rd ed. 1979) quoting, *People v. Board of Trustees of Village of Patchogue*, 217 N.Y. 466, 112 N.E. 169 (1916), *aff'g.* 171 App.Div. 347, 156 N.Y.S. 1096 (1916). Here, the boundaries described in the annexation resolution of the territory to be annexed could be ascertained fairly and reasonably without legal interpretation. The persons affected within the territory to be annexed could determine whether the annexation resolution affected their property, and the trial court made an express finding that no evidence was given to show that the affected property owners did not receive the required notification. Therefore, we conclude that the description and boundaries given in the annexation resolution complied with the requirements of SDCL 9-4-4.2(1) because they adequately described the property so as to give notice to affected land owners of the proposed annexation.

The judgment is affirmed.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., dissents.

McKEEVER, Circuit Judge, sitting for DUNN, Retired Justice.

WUEST, Circuit Judge, Acting as a Supreme Court Justice did not participate.

HENDERSON, Justice (dissenting).

This is another example of where government prevails against the people. Our Republic was not founded upon the collective rights of government. It was founded upon individual rights of the people. Four vivid examples in this Court, in the past eight months, of decisions where government power prevailed over rights of individuals are *Eischen v. Minnehaha County*, 363 N.W.2d 199, 204 (S.D.1985) (Henderson, J., dissenting); *Moulton v. State*, 363 N.W.2d 405, 410 (S.D.1985) (Henderson, J., dissenting; Morgan, J., concurring in part, dissenting in part); *Byre v. City of Chamberlain*, 362 N.W.2d 69, 80 (S.D. 1985) (Henderson, J., dissenting); and *City of Aberdeen v. Wellman*, 352 N.W.2d 204, 206 (S.D.1984) (Henderson, J., concurring in part, dissenting in part). I vigorously dissented in all of these cases attempting to elevate individual rights over governmental entities. I vigorously dissent again. With lawbook in hand, I journey down the lonely trail of dissent once more.

The legislature's inherent power over county and municipal boundaries is nearly absolute. *County of Tripp v. State*, 264 N.W.2d 213 (S.D.1978); *Williams v. Book*, 75 S.D. 173, 61 N.W.2d 290 (1953); *State v. Goetz*, 73 S.D. 633, 47 N.W.2d 566 (1951); *Cole v. City of Watertown*, 34 S.D. 69, 147 N.W. 91 (1914); 56 Am.Jur.2d *Municipal Corporations* § 55 (1971).[1] At common law, a municipality did not have the power of annexation, C. Rhyne, *The Law of Local Government Operations* § 2.32, at 28 (1980), and "[t]he power to extend the boundaries of the municipal corporation by the annexation of adjacent territory ... may be exercised by the municipality [only] in the manner and to the extent described by law." *Goetz*, 73 S.D. at 637, 47 N.W.2d

---

**1.** S.D. Const. art. IX, § 1, approved November 7, 1972, permits legislative changes in county boundaries and the abolishment of townships only upon a majority vote of those entities affected.

at 568 (bracketed material supplied) (citations omitted); *Hunter v. Pittsburgh*, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907); 2 E. McQuillin, *Municipal Corporations* § 7.13, at 312–13 (3rd rev. ed. 1979).

A municipality of this state has no power to extend its boundaries other than that granted to it by the Legislature. Such power of *annexation* as conferred on a municipality is an extraordinary power which *must be exercised by a municipality in strict compliance with* the *statutes conferring such power.* (Emphasis supplied.)

*Rhodes v. City of Aberdeen*, 74 S.D. 179, 184, 50 N.W.2d 215, 218 (1951). True, municipalities have the power of annexation, but they have no power to accrete property by invalid means. It is therefore the function of this Court to determine if the statutory mandates have been met. *Village of Niobrara v. Tichy*, 158 Neb. 517, 63 N.W.2d 867 (1954); *City of Lenexa v. City of Olathe*, 233 Kan. 159, 660 P.2d 1368 (1983). The message in *Rhodes* is that a municipality must strictly comply; as detailed below, the City of Rapid City did not.

As the majority opinion recognizes, the annexation statutes of this state, which permit municipalities to draw surrounding areas under their protective paternal wing, require the territory so drawn to be contiguous with the municipality. SDCL 9–4–4.1 and SDCL 9–4–4.2. Contiguous requires not only a common border between the two, but also a community of interests so that a homogeneous and unified entity develops which is a natural and reasonable extension of municipal boundaries. *Big Sioux Township v. Streeter*, 272 N.W.2d 924 (S.D.1978). "[A]s to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separation or segregation." 56 Am.Jur.2d

*Municipal Corporations* § 69, at 125 (1971); *Big Sioux Township*, 272 N.W.2d at 926; *Township of Owosso v. City of Owosso*, 385 Mich. 587, 189 N.W.2d 421 (1971). In the present case, however, the annexation of the Deadwood Avenue area will not create a homogeneous and unified entity.[2] For, indeed, there will exist within the newly annexed area a huge island—the South Dakota Cement Plant—which comprises nearly one-third of the total annexation area, which will not be subject to municipal zoning regulations or land use restrictions. Authorities: 1977–1978 Biennial Rep.S.D. Att'y Gen. 26; 8 E. McQuillin, *Municipal Corporations* § 25.15, at 39 (3rd rev. ed. 1983); *Floyd v. New York State Urban Dev. Corp.*, 70 Misc.2d 187, 333 N.Y.S.2d 123 (1972); *Berger v. State*, 71 N.J. 206, 364 A.2d 993 (1976); *Township of Lower Allen v. Commonwealth*, 10 Pa. Commw. 272, 310 A.2d 90 (1973). It will also be exempt from some taxes under S.D. Const. art. XI, § 5, because it is state-owned property.[3] In fact, the Plant Engineer for South Dakota Cement testified at trial that she had been advised that Rapid City did not intend to require building permits for projects over $500. That the Deadwood Avenue annexation will lead to a homogeneous and unified area is an absurd conclusion which beggars all reality; for, in reality, there will exist an island or enclave not subject to the same regulations, restrictions, and taxes as the property which surrounds it. For nearly all intents and purposes, the Cement Plant will not be within the jurisdiction of the City. Annexation plans which create islands or enclaves of unannexed areas have been invalidated in *Township of Genesee v. Genesee County*, 369 Mich. 592, 120 N.W.2d 759 (1963); *City of Saginaw v. Bd. of Supervisors*, 1 Mich. App. 65, 134 N.W.2d 378 (1965); and *Char-*

---

**2.** Four areas, distinct and unrelated to the other, are included in the annexed area: (1) small rural type residences having their own sewer and water systems; (2) 160 acres of land held for future mineral extraction by the State Cement Plant, all undeveloped; (3) light industrial and commercial establishments situated along Deadwood Avenue; and (4) a heavy industrial

and quarrying area of land owned by the State Cement Plant, Dakota Block, and Dakota Steel.

**3.** S.D. Const. art. XI, § 5, provides in part: "The property of the United States and of the state, county and municipal corporations, both real and personal, shall be exempt from taxation...."

ter Township of Pittsfield v. City of Ann Arbor, 86 Mich.App. 229, 274 N.W.2d 466 (1978). For the reason that the annexation plan in question creates an island not subject to the same constraints as the total annexation area, I likewise would hold the plan to be invalid. A homogeneous and unified entity simply does not result from this annexation.

Nor can I agree that this is a natural and reasonable annexation based on growth and the flow of benefits. Big Sioux Township, 272 N.W.2d 924. As stated in my concurrence in part, dissent in part in Smith v. City of Rapid City, 307 N.W.2d 598, 605 (S.D.1981), Rapid City's orderly growth is to the east, away from Deadwood Avenue; for, to the west, there are the mountainous Black Hills. These are owned, by and large, by the United States government and are managed by the United States Forest Service. To the immediate west of Rapid City lie rough terrain, canyons, and rugged country. Therefore, there are governmental and topographical barriers to growth in that direction. In fact, there exists rough terrain in the very land sought to be annexed where there are no plans for streets. Some 700 acres exist, upon which there exists no plan for streets. Neither does the flow of benefits mandate this to be a natural and reasonable annexation. The flow of benefits is one way in this case—in the direction of the City. Underlying the City's motivation is a motivation to secure additional tax money. Not only will Rapid City enjoy the income which some of its citizens earn from working in the Deadwood Avenue area and enjoy the money spent by Deadwood Avenue residents in Rapid City businesses, but it will now enjoy increased tax revenues. In return, as pointed out below, Rapid City will be providing substandard services which the residents and property owners do not need. The so-called plan of the City of Rapid City for annexation of this area is a charade and is prompted by a quest for tax money. This Court has condemned such abuse of annexation powers, and in Big Sioux Township, 272 N.W.2d at 926 n. 3, Retired Justice Francis Dunn wrote: "The converse is also true, i.e., the limits of a municipal corporation should not be extended for the sole purpose of increasing the municipal tax base absent the outflow of services and facilities to outlying territory." This action does not constitute a natural and reasonable annexation, but instead is an impermissible ruse to increase municipal revenues. Johnson v. Town of Castlewood, 40 S.D. 493, 168 N.W. 124 (1918). Past decisions of the South Dakota Supreme Court are in favor of the individual rights of appellants and against the so-called government rights of appellee. These latter issues are not res judicata per Smith v. City of Rapid City, 307 N.W.2d 598, because the situation or motive may have changed over the years, Zajicek v. City of Wessington, 53 S.D. 315, 220 N.W. 913 (1928); the present case is based on a new and different annexation proposal and is not the same cause of action; the 1979 annexation proceeding was determined to be invalid by the trial court and affirmed by this Court; further, not all parties in the present case were parties in Smith, nor were they privy thereto. Black Hills Jewelry Mfg. v. Felco Jewel Ind., 336 N.W.2d 153 (S.D.1983).

Before a municipal corporation of this state can involuntarily annex contiguous territory, it must "conduct a study to determine the need for the contiguous territory and to identify the resources necessary to extend the municipal boundaries." SDCL 9–4–4.1.

Based on the study, provided for in § 9–4–4.1, the governing body may adopt a resolution of intent to extend its boundaries. The resolution shall contain the following:

(1) The description and boundaries of the territory to be annexed;

(2) That ample and suitable resources exist to accommodate the orderly growth or development of the contiguous territory;

(3) That municipal utilities and a major street network are considered in terms of the proposed boundary extension and that there is a definite timetable

upon which municipal service will be extended into the contiguous territory; (4) The approximate cost of the extended service to the residents of the contiguous territory and the municipality[.]

SDCL 9–4–4.2(1–4) (Supp.1984). For the reasons hereafter expressed, I believe the City of Rapid City has failed to comply with these strict statutory requirements.

SDCL 9–4–4.2(1) requires the annexation resolution to contain "[t]he description *and* boundaries of the territory to be annexed[.]" (Emphasis supplied mine.) The annexation resolution in question, however, did not include a legal description and boundaries of the annexed territory. Instead, affected residents were supposed to be apprised by a kaleidoscope of references to metes and bounds, Interstate 90, a geographical survey, and some platted lots of record. This clearly does not comply with the mandate of SDCL 9–4–4.2(1), and the trial court's ruling in this regard is clearly erroneous. Amazingly, neither the Resolution of Annexation nor the Resolution Study contained a property map by which the individual property owners could determine and estimate their costs. If the law is as stated in SDCL 9–4–4.2(1), then it is legally irrational that a city can legally annex with a metes and bounds description. Metes and bounds descriptions are not legal descriptions. State law fails to recognize metes and bounds descriptions. SDCL 43–21–1 and SDCL 7–9–7. For an annexation resolution to meet the statutory mandate, it must describe the area affected by lot, block, and legal subdivision.[4] Any other description which may fairly and reasonably describe the area, as the majority opinion holds, does not meet the statutory prescription. Strict compliance of annexation statutes is vital. *Rhodes v. City of Aberdeen,* 50 N.W.2d 215.

SDCL 9–4–4.2(4) requires the annexation resolution to contain "[t]he approximate cost of the extended service to the residents...." In *Smith v. City of Rapid City,* 307 N.W.2d at 601, this Court stated that "a city must make every reasonable effort to give a full and accurate cost approximation." In the case at hand, however, these statutory and case law dictates have not been met. Rapid City failed to provide the approximate cost per resident or property owner. "[T]he statute clearly requires that the city estimate the costs of major utilities and services to be supplied *to residents* of the annexed area." *Smith,* 307 N.W.2d at 602 (emphasis supplied). Here, City attempted to circumvent the statutory requirements by providing a gross cost of the services *to the area* and then by providing a cost *per acre.* Such an estimate does not inform a resident of what it is going to cost him. This information was reasonably available to the City.[5] At trial, the engineer retained by the City testified that an estimate of the sewer system costs to individual property owners could have been furnished with minimal engineering effort, but such a calculation was excluded from his contract with Rapid City. This hid from the people the costs to be imposed on them. It is an obvious attempt to subserve those laws which the legislature passed, the intent of the elected representatives of the people being that property owners were to be apprised of the approximate costs to their property.

Not only did Rapid City's annexation resolution fail to inform of the area affected and the cost per resident, but it also failed to constitute a bona fide plan furnishing substantially equivalent services.

One recognized basis on which the annexation may be challenged is that the city's plan for the extension of municipal

---

**4.** There are five pages of metes and bounds descriptions which comprise a reader's nightmare. Our state legislature long ago recognized a need to rid citizens of this onerous task of describing real property.

**5.** Plans for a sewer district or sewer districts, main lines, trunk lines, service sewers, and the

sewer utilities to be furnished or attempted to be furnished by the City did not surface. Without such a plan, the City is unable to approximate costs: "Obviously, a city is unable to approximate costs of extending service to undeveloped areas unless plans for development are available." *Smith,* 307 N.W.2d at 601.

services was not a *bona fide* plan "prepared and submitted in accordance with the statute in good faith and with honest intentions on the part of the city to implement the plan as submitted," but was rather a "hoax" designed "only to accomplish the annexation of territory." *Clarke v. City of Wichita,* 218 Kan. 334, 346, 543 P.2d 973, 985 (1975).

*United States v. City of Leavenworth, Kansas,* 443 F.Supp. 274, 284 (D.C.Kan. 1977). In *Smith,* 307 N.W.2d at 602, this Court quoted *Clarke v. City of Wichita,* 218 Kan. 334, 346, 543 P.2d 973, 985 (1975), in this regard also:

> [T]he legislature ... intended that a city proposing annexation of territory to the city must first prepare and submit a *bona fide* plan covering each major governmental and proprietary service to be furnished the territory to be annexed substantially equivalent in standard and scope to such governmental and proprietary services furnished by the annexing city to persons and property already located [within the city]. (Brackets in original.)

Thus, Rapid City was required to prepare and submit a bona fide plan and furnish services substantially equivalent in standard and scope to those offered Rapid City residents. A review of the record reveals that City has provided neither.

Rapid City's consulting sewer engineer testified at trial that his work did not even constitute a preliminary survey and was merely a reconnaissance level effort. Another engineer also testified that 68% of the planned sewer system would not be deep enough to serve the property and that additional unknown costs would be involved. Such an unworkable windshield sewer scheme does not constitute a bona fide and good faith plan but instead is a hoax implemented solely to complete the annexation. For a trial court to rule otherwise is not only clearly erroneous, it amounts to factual fantasy.

Further inquiry reveals that Rapid City's annexation plan also did not propose to provide the newly annexed area with services substantially equivalent in standard and scope to those offered the City's residents. The substantially equivalent services requirement is necessary to protect involuntary annexation residents and "to prohibit annexation by municipalities which are unable to render reasonable services." *Smith,* 307 N.W.2d at 601. The annexation area under consideration totals 2,487 acres for which the annexation study and resolution recommends seventeen inferior mercury vapor lamps. All future lighting projects for Rapid City's main streets, however, will use new high-pressure sodium lighting. This is a more expensive and better lighting system than the mercury lamps. Recent major lighting projects in commercial areas have also used the better lighting system. The trial court found the street lighting proposed for Deadwood Avenue to be substantially equivalent in standard and scope to that provided in Rapid City. Such a finding is clearly erroneous. Rapid City has not used the inferior lighting system in recent major commercial projects and does not plan to use it in future main street projects. A traffic engineer for Rapid City also testified at trial that, in her opinion, the new high-pressure sodium lights should be installed in the Deadwood Avenue area. Yet, the City here seeks to bring Deadwood Avenue onto its tax rolls and in return provide it with substandard and inferior street lights. These services are not the substantial equivalent dictated by *Smith.*

SDCL 9–4–4.2(3) provides:

> Based on the study, provided for in § 9–4–4.1, the governing body may adopt a resolution of intent to extend its boundaries. The resolution shall contain the following:
>
> * * * * * *
>
> (3) That municipal utilities and a major street network are considered in terms of the proposed boundary extension and that there is a definite timetable upon which municipal service will be extended into the contiguous territory[.]

This statute obviously contemplates that there must be a major street network considered. However, the plan of Rapid City contains no roads traversing the annexed area from east to west. Streets are vital to growth, progress, and service to citizens. The City apparently has no interest in a viable transportation street network in the proposed annexed area. There cannot be a homogeneous and unified entity without streets or a plan for streets. If the natural growth is to the west, which the City would lead this Court in two different cases to believe, why no road or street from east to west or west to east?

No legal wand by court of law can mend the flaws of the annexation procedure before us. This decision shall become one of the dark pages in the history of the development of annexation law in this state. I would burn the cloak of officialdom which covers the proposed annexed area; and in so doing, light the way for good intentions and proper annexation procedures in the future. If Rapid City, or any city in South Dakota, desires to grow and annex, it must be fair to its neighbors and act within the law.